[No. 8449.    Department Two.    February 17, 1910.]

JOHN LIVIERATOS, *Respondent*, v. COMMONWEALTH SECURITY COMPANY, *Appellant*.[1]

CORPORATIONS—OFFICERS AND AGENTS—AUTHORITY TO CONTRACT—VENDOR AND PURCHASER. A sales agent for a corporation has apparent authority to enter into a contract, and may therefore bind the company to refund all purchase money paid after payment of six monthly installments, if the purchaser is then dissatisfied, where it appears that the agent had general authority to make sales, and that the officers and agents met at frequent intervals to discuss the affairs of the company, on which occasions the president authorized the sales agents to make such a contract with purchasers; since the sales agents had a right to assume that the corporation was speaking through its president, unless the contrary appears.

VENDOR AND PURCHASER—CONTRACTS—"PROMPT" PAYMENT—REMEDIES OF PURCHASER—REFUNDING PRICE. Where a contract for the sale of lots requiring payment in monthly installments provided for forfeiture in case of default for more than sixty days, payments made within the sixty-day limit are "promptly" made, within the

[1]Reported in 106 Pac. 1125.

meaning of an agreement to refund the first six installments if the purchaser is then dissatisfied and the same have been "promptly paid."

TENDER—NECESSITY—WAIVER. A tender is not necessary where it conclusively appears that it would not have been accepted if made.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 12, 1909, upon findings in favor of the plaintiff, in an action on contract, after a trial before the court without a jury. Modified.

*Douglas, Lane & Douglas,* for appellant.

*Freudenberg & Heaton,* for respondent.

RUDKIN, C. J.—The Narrows Land Company, a corporation, is the owner of a large tract of land in Pierce county, platted as Regents Park. A realty company known as Bowes-Irwin Company was formed or incorporated for the purpose of selling the lots contained in this plat. The defendant, Commonwealth Security Company, a corporation, was employed by the Bowes-Irwin Company as sales agent for the city of Seattle and vicinity. One W. H. B. Thomas was a sales agent for the defendant company, and was also connected in some way with the Bowes-Irwin Company. On the 18th day of November, 1907, the plaintiff made a deposit of $20 on the purchase price of two lots in the above tract, and received a receipt therefor, with the following endorsement on the back, signed by Thomas as manager: "'Agreement to return amount paid after six monthly installments to be given to purchaser on execution of contract of sale." On November 20, 1907, Thomas delivered to the purchaser the following agreement, written on one of the letter heads of the defendant company:

"I hereby agree at the option of John Livieratos, to refund to the said John Livieratos, after six monthly installments have been paid upon lots 24 and 25, Block 1, Regents Park, Pierce county, Washington, (provided said installments have been promptly paid as the same fall due) the

amount paid by the said John Livieratos on said lots after the said six monthly installments have been paid; the said John Livieratos to transfer all his right, title and interest in and to said lots on payment to him of said sum, and to accept said sum without interest; hereby waiving all profits which might accrue on said lots in the event he exercises the option aforesaid.

"W. H. B. Thomas, Sales Mgr. Regents Park."

On December 19, 1907, a formal contract of sale was entered into between the Narrows Land Company and the plaintiff for the two lots. By the terms of this contract the purchase price of $2,650 was payable as follows: $265 on execution of the contract, and $35 on or before the 19th day of each and every month thereafter, until the full payment of the purchase price, with a declaration of forfeiture in case the purchaser continued in default for more than sixty days after any installment became due. The initial payment of $265 was made as follows: November 18, 1907, $20; November 21, 1907, $112.50; January 4, 1908, $70; January 21, 1908, $62.50. The monthly installment due January 19, 1908, was paid March 19, 1908; the installment due February 19, 1908, was paid April 18, 1908; the installments due March 19, 1908, and April 19, 1908, were paid May 18, 1908, and the installment due May 19, 1908, was paid May 29, 1908. The present action was instituted to recover the amount of these several payments, the complaint alleging the execution of the foregoing contracts, the payment of five monthly installments according to their terms, a tender of the sixth monthly installment in due time, a demand for the return of the several sums paid, and a refusal on the part of the defendant to comply therewith. The material allegations of the complaint were put in issue by the answer, and the cause was tried before the court without a jury. The court found the facts substantially as alleged in the complaint, and gave judgment for the plaintiff. From that judgment, the defendant has appealed.

In support of the appeal it is contended, first, that the

proof fails to show that the appellant authorized the execution of the Thomas agreement for the return of the installments paid; second, that the respondent did not make his payments promptly as required by the terms of the agreement, and third, that the respondent did not make a demand for the repayment of the money within the time limited by the contract, and did not tender to the appellant a transfer or assignment of his contract or interest in the lots.

(1)   The witness Thomas, who executed the agreement upon which the respondent relies, testified that he represented the appellant in the sale of the lots to the respondent; that he executed the agreement in its behalf, and was authorized so to do by the president of the appellant company, and that the company had full knowledge of the execution of the agreement within a day or two after its execution.   True, the witness testified further that some time after the execution of the instrument a doubt arose in his mind whether his authority came from the president as an individual or as a representative of the corporation, but his doubts were not justified by the facts out of which they arose.   The witness testified that the officers and agents of the appellant company met at frequent intervals to discuss the affairs of the company, and on such occasions the president authorized sales agents to inform purchasers of lots in Regents Park that if they became dissatisfied with their purchases at the end of six months the lots would be taken off their hands, and their money refunded, but whether this was to be done by the company, or by the president individually he could not recall. Certainly if the affairs of the company were under discussion when such instructions were given, those to whom they were given had a right to assume that the corporation was speaking through its president, unless the contrary appeared, and to govern themselves accordingly.   In this day and age when so large a part of the business of the commercial world is transacted through the agency of corporations, those dealing with them cannot be expected to prove the authority

of corporate agents by producing a power of attorney under the corporate seal. They have a right to rely upon the apparent authority of those with whom they deal, and for acts done within the scope of that authority the corporation is bound. As said by this court in *Rowland v. Carroll Loan & Inv. Co.*, 44 Wash. 413, 87 Pac. 482:

"It is not in harmony with any sound code of ethics, and is not the policy of the law, to permit a solvent corporation to obtain and appropriate the property of another on the credit of its solvency, and then escape responsibility by hiding behind some impecunious officer of such company."

(2) On the second question presented we are of opinion that the court was fully warranted in finding or concluding that payments made within the sixty days allowed by the contract of sale were promptly made within the agreement to refund. The two contracts related to the same subject-matter, were a part of the same transaction, and if the purchaser was not in default under the one he was not in default under the other. The appellant accepted the respondent's money without objection and the objection now interposed to its return does not strongly appeal to us.

(3) There was a direct conflict in the testimony as to the date when the last installment was tendered, but upon that question, as well as upon all other controverted questions of fact, we are in full accord with the findings of the court below. The fact that the respondent failed to tender a transfer or assignment of his contract or interest in the lots is no defense under the circumstances disclosed by this record, but is nevertheless entitled to consideration in the rendition of the final judgment. The record shows conclusively that a tender, if made, would not be accepted, and the law does not require one to do a vain or useless thing. However, the respondent is not entitled to both the money and the contract. If the respondent is entitled to a return of his money, so the appellant is entitled to the contract, for such was the agreement of the parties.

The judgment to this extent must be modified by requiring the respondent to file a properly executed assignment of the contract with the clerk of the superior court, within thirty days after the remittitur is filed there and before any execution is issued on the judgment. If he fails in this, the court below will vacate its judgment and dismiss the action. This particular question was not called to the attention of the court below, except as an absolute defense to the action, and for this reason no costs will be allowed to either party in this court.

PARKER, DUNBAR, CROW, and MOUNT, JJ., concur.