[No. 9259.  Department Two.  June 2, 1911.]

## H. G. BRACE, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

RAILROADS—AGENTS—SCOPE OF AUTHORITY.  The superintendent of
the dining car department of a transcontinental railroad has *prima
facie* authority to contract for menu card folders for use in the com-
pany's dining cars.

WITNESSES—CROSS-EXAMINATION—DEVELOPMENT OF DEFENSE.  In
an action on contract by a railroad company, signed by an author-
ized agent, it is not proper cross-examination, after the agent has
merely identified his signature, for the defendant to develop its de-
fense that the order had been materially altered after it was signed.

TRIAL—QUESTION FOR JURY—CREDIBILITY OF WITNESS.  Upon an
issue as to whether a contract had been altered after it was signed
by defendant's agent, the credibility of the evidence of the agent is
for the jury.

[1]Reported in 115 Pac. 841.

14—63 WASH.

Appeal from an order of the superior court for King county, Gay, J., entered July 18, 1910, granting a new trial, after granting a nonsuit, in an action on contract. Affirmed.

C. H. Winders, for appellant.

H. A. P. Myers, for respondent.

CROW, J.—This action was commenced by H. G. Brace, doing business as H. G. Brace & Company, against Northern Pacific Railway Company, a corporation, to recover profits plaintiff would have realized in fulfilling an order for menu card folders. A nonsuit was granted, but later an order was entered sustaining plaintiff's motion for a new trial, from which the defendant has appealed.

The written order, taken for respondent by one W. S. Smith, his agent, was signed by H. J. Titus, conceded to be the superintendent of the appellant's dining car department, with offices in St. Paul, Minnesota, and Seattle, Washington. The alleged order provided that 25,000 bas-relief special menus were to be shipped to the Northern Pacific Railway commissary department at St. Paul, were to portray illustrated subjects, and were to be submitted to appellant for inspection. Respondent introduced evidence to show that he proceeded with the fulfillment of the order, that he at all times tendered full performance, but that he was prevented from completing the work by appellant's failure to act upon or approve certain preliminary sketches submitted for inspection. The controlling issue of fact was whether H. J. Titus, alleged to have executed the written order, had authority to thereby bind appellant.

Appellant contends, (1) that respondent failed to show such authority; and (2) that the order was altered in a material respect after its alleged execution. When the order was delivered to respondent, the business card of Titus was attached thereto, upon which appeared the appellant's trade-mark, and the words: "Hazen J. Titus, St. Paul, Minn.,

Superintendent Dining Car Dep't. Northern Pacific Railway." Although it is conceded that Titus held the position mentioned, appellant contends no evidence was introduced showing the full scope of his authority; that the burden was imposed upon respondent to establish by competent evidence the fact that Titus, as superintendent of appellant's dining car department, was authorized to contract for and order the cards; and that proof of his official position was not of itself sufficient.

It is elementary that a principal is only responsible for acts of his agent performed within the scope of his authority, and that to hold the principal to such responsibility, a third party in dealing with the agent must ascertain his authority, and know that he is acting within its apparent scope. Ordinarily it would not be difficult for persons dealing with one assuming to act as agent of a private individual, to ascertain the nature and extent of his authority; but in dealing with an agent who, as manager or superintendent, controls or is in charge of a department of a great corporation such as appellant, a different condition would be presented. Corporations necessarily act through authorized agents. The more extensive their business, the greater the number of their agents. Departments are created, in charge of superintendents, with many subordinates through whom the corporation conducts its business and deals with the public. If each and every individual having business with such a corporation must at his peril ascertain and determine the exact scope and limitation of the agent's authority, it is manifest that he could not safely deal with the acknowledged agent, and that the business of the corporation itself would be materially impaired. The public is compelled to rely upon the apparent authority of the conceded agents of such corporations, especially when, as managers or superintendents, they are placed in control of departmental affairs. The average individual would be justified in believing the superintendent of the dining car department of a railway corporation was

authorized to contract for menu cards for exclusive use in its dining cars, the superintendent himself assuming to purchase them. The superintendent should know the limitations placed upon his authority, and it is to be presumed he will not exceed them. But a private individual not connected with the corporation could not be aware of such limitations. He would readily sell supplies to such an agent for use in his particular department. If for its own purposes a corporation is compelled to employ an agent with such apparent authority as may mislead the public, it should be required to secure one who will not act in excess of his actual authority, and thereby deceive others. Respondent has an order, signed by H. J. Titus, conceded to be superintendent of appellant's dining car department. The cards could only be used in dining cars, and were to be shipped to appellant's commissary department. Respondent was justified in assuming that Titus, the superintendent, had authority to purchase the cards for dining car use. Titus, by giving the order, asserted and exercised such authority. Respondent in good faith proceeded to fill the order upon his part, and incurred expense in so doing. He repeatedly wrote Titus relative to subjects submitted for inspection, receiving but one answer. Although much time elapsed, the respondent was not advised by Titus, by appellant, or by any of its agents, that Titus had exceeded his authority, until respondent commenced this action, when appellant answered by denials only. It now urges the defense that Titus acted in excess of, or without, authority.

Respondent conceded it might be possible for appellant to adduce proof sufficient to nullify his *prima facie* case; and that if no further evidence as to the authority or apparent authority of Titus was thereafter produced, respondent might possibly fail before the jury. But he contends that, in any event, the question of authority, under the evidence, was for the jury. In *Moses Land Scrip & Realty Co. v.*

*Stack-Gibbs Lumber Co.*, 56 Wash. 529, 106 Pac. 207, we said:

"Corporations necessarily act through officers and agents, and in these busy times, when the great bulk of the transactions of the commercial world is carried on by them, parties with whom they deal do not always find it convenient, practicable, or possible to ascertain from the corporation records what the exact authority of such agents may be, in advance of each and every business negotiation. The public, therefore, deals with those individuals who, in apparent authority, conduct and have charge of the offices and other places of business maintained by such corporations, and who are thus held out as their authorized agents."

In *Livieratos v. Commonwealth Security Co.*, 57 Wash. 376, 106 Pac. 1125, we said:

"In this day and age when so large a part of the business of the commercial world is transacted through the agency of corporations, those dealing with them cannot be expected to prove the authority of corporate agents by producing a power of attorney under the corporate seal. They have a right to rely upon the apparent authority of those with whom they deal, and for acts done within the scope of that authority the corporation is bound."

In *Parrot v. Mexican Central R. Co.* (Mass.), 93 N. E. 590, in speaking of the authority of a general passenger agent and a passenger traffic manager to bind a railway company to contract for a publication known as a guide book, the supreme judicial court of Massachusetts said:

"Apparently, they were the general and highest representatives of the corporation that had any direct dealings with the public in reference to the business of the passenger department. They seem to have had all the authority that anybody dealing with the public had to bind the corporation by contracts for the expenditure of money in their department. The business which they had in charge called for the expenditure of money. A secret instruction to them, as general agents in charge of such business, that they should obtain permission from an executive officer before expending

any money, was not binding upon persons dealing with them in good faith, in reliance upon their ostensible authority."

On the record before us, we hold sufficient evidence was produced for submission to the jury, upon the issue of the authority of Titus.

Appellant further contends the undisputed evidence shows that the written order upon which this action is predicated was altered in a material respect after it had been signed by Titus. The respondent called Titus as a witness, and directing his attention to the order, had him identify his signature, asking no further question. On cross-examination appellant, over respondent's objection, was permitted to show that a change, contended to be material, had been made in the wording of the order. Respondent insists this cross-examination was improper; that its admission was erroneous, and constituted error sufficient in itself to sustain the order granting a new trial. The evidence thus elicited by appellant from its superintendent was an attempt to establish its defense through the medium of respondent's witnesses, and over respondent's objection. We do not think it was proper cross-examination. But, conceding it to have been proper, the testimony of Titus thus elicited upon his cross-examination was not conclusive upon respondent. He was an interested and unfriendly witness. By voluntary statements, not responsive to questions propounded, he attempted to inject statements into the record for the purpose of showing the alteration appellant now urges. His credibility was for the jury, and it was for them to determine whether the alleged alteration had in fact been made. The case was one for the jury.

The judgment is affirmed.

Chadwick and Morris, JJ., concur.