[No. 15430. Department One. December 16, 1919.]

## J. A. COLEMAN, *Respondent,* v. SEATTLE NATIONAL BANK, *Appellant,* H. K. SPALDING *et al., as Spalding Fruit Company, Interveners and Appellants.*[1]

PRINCIPAL AND AGENT (36½) — AUTHORITY — NEGOTIABLE INSTRUMENTS — INDORSEMENT. Authority to indorse checks payable to a fruit company is not conferred by a statement certifying that the agent was authorized to "transact any and all business" for the company, in the absence of any circumstances touching the nature of the business from which the power might be implied.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 12, 1919, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*A. W. Buddress,* for appellants.

*Julius A. Coleman, per se.*

PARKER, J.—The plaintiff, Coleman, commenced this action in the superior court for King county, seeking recovery from the defendant bank upon a check drawn by the Chauncy Wright Restaurant Company against the bank, in favor of the Spalding Fruit Company, which check was thereafter indorsed and transferred by one Towse, assuming to act as agent for the fruit company, to the American Railway Publishing Company, and thereafter indorsed and transferred by Towse, assuming to act as the agent for the publishing company, to the plaintiff, Coleman. The fruit company intervened in the action, claiming ownership of the check and that Towse had no authority to so transfer it. The bank refused to pay the check upon its presentation by Coleman, because of a request of

[1]Reported in 186 Pac. 275.

the fruit company not to pay it, and the claim of the fruit company that Towse had no authority as its agent to indorse or transfer the check. Trial before the court without a jury resulted in findings and judgment awarding to Coleman recovery upon the check, both as against the bank and the intervening fruit company. From this disposition of the case, the bank and the fruit company have jointly appealed to this court.

The controlling facts may be summarized as follows: On June 22, 1918, the restaurant company drew its check in usual form for $293.15 against its deposit account in the bank, payable to the order of the fruit company. The check went into the possession of Towse, and we may assume, for present purposes, that it was properly in his possession as the agent of the fruit company. The check appears to have been given in payment for certain invoices of eggs. The record is silent as to Towse having anything to do with the sale of the eggs, or as to the nature of his relationship to the fruit company, or as to any other transaction had by him with or for the fruit company; save and except only as his relation to the fruit company is evidenced by a writing reading as follows:

"Yakima, Washington, June 12, 1918.
"To whom this may be presented,
"This is to certify that the bearer, Mr. R. S. Towse, is an authorized representative of the Spalding Fruit Company, and is hereby authorized to transact any and all business for said company.
"Spalding Fruit Company
"Per H. K. Spalding, Manager."

On June 24, 1918, the check, evidently while in Towse's possession, was certified by the bank, as follows: "Good when properly endorsed," these words being stamped across the face of the check and signed

by the bank's assistant cashier. Thereafter, on the same day, Towse, assuming to act as agent for the fruit company, transferred the check to the publishing company, making an indorsement on the back thereof as follows: "Spalding Fruit Co., by R. S. Towse." Thereafter, on the same day, the check was delivered by Towse to Coleman, an indorsement being made on the back thereof as follows: "American Ry. Pub. Co., by C. E. Melville, Treasurer, R. S. Towse, Mgr." The consideration for the transfer of the check by Towse to the publishing company, according to Towse's testimony, was a debt due from a member of the partnership doing business as the Spalding Fruit Company to the publishing company for shares of capital stock of the publishing company theretofore subscribed for by a member of that partnership. However, the consideration for that transfer was unknown to Coleman. The consideration for the transfer of the check by the publishing company to Coleman was indebtedness owing to Coleman from the publishing company for services theretofore rendered by him as its attorney, and the sum of $50 in money paid by Coleman to the publishing company. Towse took the check to Coleman, offering it to him in part payment for his services, except $50 of the amount thereof which he requested Coleman to pay to the treasurer of the company in money, which payment was made by Coleman accordingly. Before receiving the check, Coleman asked Towse by what authority he indorsed the check for the fruit company, and thereupon Towse produced the above quoted writing, asserting that to be his authority for so indorsing the check. Coleman had no knowledge whatever of the relationship of Towse to the fruit company, or of his authority to act for the fruit company, other than as contained in this writing then produced by Towse, and Coleman relied wholly

upon this writing as evidencing Towse's authority to indorse the check for the fruit company. Indeed, there is nothing in this record throwing any light on Towse's authority in that behalf, other than this writing. Towse was, at all times in question, the president, manager, one of the trustees, and a stockholder of the publishing company, it being a corporation, all of which was well known to Coleman at the time and long before he received the check. The check was, soon after the receiving of it by Coleman, presented to the bank in Coleman's behalf, that is, by the bank he had deposited it with for collection, and payment thereof refused because of the request made in that behalf by the fruit company and its claim of want of authority on the part of Towse to indorse or transfer the check. Thereafter this suit followed, with the result as above stated.

It is apparent from the trial court's findings and conclusions that its decision was rested upon the theory that the writing above quoted, signed by the fruit company, evidenced the conferring of authority upon Towse, as its agent, to transfer by indorsement and delivery its title to the check in question. This, it is contended by appellants, bank and fruit company, is an erroneous view of the law.

Looking to the seeming broad and comprehensive character of this writing as an agency appointment, without thought of that particular branch of the law of agency touching the execution and issuance, and the transfer by indorsement—and thereby, in effect, the issuance—of negotiable paper by an agent for his principal, the writing might seem to confer upon Towse authority to indorse and transfer the check to the publishing company; but we think a consideration of this branch of the law of agency will readily render it plain that the language of this agency writing, as

general and seemingly broad as it is, did not confer upon Towse the authority to so indorse and transfer the check. It takes something more than such general language to create such an agency. This because of the peculiar nature of negotiable paper and the rights and liabilities arising from its issuance. In 1 Mechem, Agency (2d ed.), at § 969, that learned author says:

"The power to bind the principal by the making, accepting or indorsing of negotiable paper is an important one, not lightly to be inferred. The negotiable instrument, in our law, is a contract which stands upon an independent footing. It is designed by its nature to circulate freely in the business world, and may come to persons and places far remote from those of its creation. It may confer upon a subsequent holder rights which the original holder did not possess, and its transfer may impose upon the maker obligations, against which his defenses are unavailing. The authority to create such obligations is obviously a delicate one, easily susceptible of abuse, and, if abused, bringing disaster and financial ruin to the principal. Our law therefore properly regards such an authority as extraordinary, and not ordinarily to be included within the terms of general grants; and the rule is absolutely established that it can exist only when it has been directly conferred or is warranted by necessary implication."

We are quite unable to see any implication arising from the language of this writing alone, suggesting that Towse possessed this extraordinary agency power, and we are to remember that there is nothing in this record showing any extraneous circumstances touching the nature of the business he was supposed to or did transact for the fruit company from which any such implication can be drawn. In the text of 2 C. J. 636, the law is well stated, as follows:

"Commercial paper, such as bills, notes, and checks, passes current to a limited extent like money, and accordingly power to an agent to execute or indorse it

is to be strictly limited, and will never be lightly inferred, but ordinarily must be conferred expressly. The most comprehensive grant, in general terms, of power to an agent conveys no power to subject the principal to liability upon such paper unless the exercise of such power is so necessary to the accomplishment of the agency that such intent of the principal must be presumed in order to make the power effectual.''

This statement of the law finds support in numerous decisions of the courts cited thereunder. 1 Daniel, Negotiable Instruments (6th ed.), § 292; Tiedeman, Commercial Paper, § 77; 31 Cyc. 1381.

We conclude that this writing, signed by the fruit company and exhibited by Towse to Coleman as evidence of his authority for indorsing and transferring the check to the publishing company, there being no surrounding circumstances indicating any necessity for Towse making such assignment in the accomplishment of his agency duties, did not give him the power to indorse and transfer the check as agent for the fruit company, and that Coleman had no right to assume that he had such power. It follows that the judgment of the trial court must be reversed, Coleman denied recovery thereon, and the fruit company adjudged to be the owner of the check. The cause is remanded to the superior court with directions to enter judgment accordingly.

Since the check was introduced in evidence in this case, and is attached to the statement of facts therein on file in this court as exhibit A, the clerk of this court is directed to return the check to the clerk of the superior court to the end that it may be delivered to the Spalding Fruit Company, upon the entry of judgment by the superior court as herein directed.

HOLCOMB, C. J., MAIN, MACKINTOSH, and MITCHELL, JJ., concur.