[No. 18943. Department One. April 16, 1925.]

SECURITY STATE BANK, *Appellant,* v. H. ADKINS *et al., Respondents.*[1]

BILLS AND NOTES (1, 19)—PRINCIPAL AND AGENT (36½)—EXECUTION—SIGNATURE—LIABILITY—STATUTES. Under Rem. Comp. Stat., § 3409, providing that no person is liable upon a negotiable instrument whose signature does not appear thereon, a principal is not liable upon notes signed only by his alleged agent on the assumption that such agent was acting for him.

BILLS AND NOTES (1)—EXECUTION—SIGNATURE. Under Rem. Comp. Stat., § 3409, providing that no person is liable upon a negotiable instrument whose signature does not appear thereon, and that one who signs by a trade or assumed name is liable as if he had signed his own name, it cannot be claimed that a note signed only in the name of an alleged agent or partner of another for whom he had been conducting a ranch, was in legal effect a signature in the "trade name" of such other.

PRINCIPAL AND AGENT (36½)—AUTHORITY—EXECUTION OF NOTES. The general power of an agent to conduct a ranch for the owner, even if authorized to do so, using the name of the agent as the owner's trade-name, does not authorize the agent to borrow money and execute promissory notes therefor in such trade-name.

SAME (10)—AUTHORITY OF AGENT—RATIFICATION—ESTOPPEL. The fact that a principal in 1919 furnished the money to pay notes executed by his agent for money borrowed to run the business does

[1]Reported in 235 Pac. 18.

not estop the principal from denying authority to execute notes in his own name for his own purpose entirely beyond his agency powers.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered May 10, 1924, in favor of the defendants, in an action on promissory notes and to foreclose a mortgage, tried to the court. Affirmed.

*Moulton & Jeffrey,* for appellant.

*Tannahill & Leeper* and *M. F. Gose,* for respondents.

PARKER, J.—The plaintiff bank seeks recovery from the defendants Adkins and wife and Collins upon two wholly unpaid negotiable promissory notes, one for the principal sum of $4,950 and interest, in terms payable to the bank, purporting to have been executed and delivered to it by Adkins on February 23, 1922; and one for the principal sum of $2,447 and interest, in terms payable to Alfred C. Amon, executor, purporting to have been executed and delivered to him by Adkins on the same day and thereafter, as it is claimed, duly assigned to the bank. The bank also seeks foreclosure of a chattel mortgage purporting to have been executed and delivered to it by Adkins to secure both of these notes, upon livestock and farm machinery in his care and custody, but the property of Collins, situated on Collins' ranch near Richland, in Benton county. A trial upon the merits as an equity case in the superior court for Benton county resulted in the rendering of a judgment awarding to the bank recovery of a personal money judgment against Adkins and wife upon the notes, denying recovery in any amount as against Collins, denying foreclosure of the mortgage, and decreeing cancellation of the mortgage as having been executed by Adkins without authority and in

fraud of the rights of Collins. From this disposition of the case in the superior court, the bank has appealed to this court, claiming that it is entitled to be awarded recovery against Collins as an original obligor upon the notes, and also that it is entitled to have his property mortgaged by Adkins subjected to the payment of the notes because of the business relations existing between him and Adkins.

As we view this somewhat involved record, we think the main controlling facts may be fairly summarized as follows: At all times in question Collins has been the owner of a fairly well stocked and equipped 386 acre ranch situated near Richland, in Benton county. In 1912, Adkins was employed by Collins, compensating him by monthly wages, to manage the ranch; Adkins and his wife to live upon the ranch and also to have garden and dairy produce from the ranch necessary to supply their household needs. The ranch was managed by Adkins under this agreement until September, 1921. Collins lived in the eastern part of the state about 100 miles distant, where he owned and carried on large farming interests. He visited the ranch occasionally, but left its management, including the hiring of help, incurring of other expenses, marketing of the stock and produce, collections therefor and paying of the expenses of operation, largely in the hands of Adkins. The finances were for the most part carried on by Adkins through his maintaining in his own name a deposit checking account with the bank, which has its place of business at Richland.

On August 30th and November 6th, 1918, Adkins borrowed from the bank sums aggregating $4,000, signing his own name to notes evidencing the loans and delivering the same to the bank. The proceeds of these loans seem to have been used by Adkins in payment of the expenses of the ranch. Collins, in the spring of

1919, learning of this borrowing by Adkins and being satisfied that the proceeds thereof were actually used in the payment of debts incurred in the operation of the ranch, on March 4, 1919, sent to Adkins $4,100 to pay that indebtedness. Thereupon Adkins paid that indebtedness. The bank about that time learned that Collins had furnished the money to pay that indebtedness. Collins then told Adkins not to borrow any more money for the operation of the ranch. Collins has been at all times well off financially and well able to furnish money needed for the operation of the ranch which might be necessary beyond its income. Indeed, he was himself a loaner of money of his own in considerable amounts. On September 1, 1921, Adkins ceased to be an employee of Collins for wages, but continued to operate and manage the ranch, including the stock and equipment thereon, as a tenant of Collins under the terms of a lease contract entered into between them on that day; the rent to be paid by Collins receiving a portion of the earnings of the ranch.

On February 23, 1922, Adkins executed in his own name and delivered to the bank the $4,950 note here sued upon, and on the same day executed in his own name and delivered to Amon the $2,447 note here sued upon. The indebtedness evidenced by the $4,950 note seems to have been, at least to a considerable extent, made up of prior loans made by the bank to Adkins after the payment of the above mentioned notes of August 30th and November 6th, 1918. The proceeds of these later loans, apparently renewed by the $4,950 note here sued upon, were, to the extent of at least $1,000, used by Adkins wholly apart from the operation of the ranch. What the bank's knowledge was as to the use to be made of these loans by Adkins is not rendered very plain by the evidence. As to the in-

debtedness evidenced by the $2,447 note to Amon, the evidence is silent as to what use was intended to be made or was made of the proceeds of that loan; that is, we are not advised by the evidence as to whether or not Amon made the loan to Adkins upon the assumption that he was loaning it to be used in connection with the ranch business.

On May 11, 1922, Adkins executed in his own name and delivered to the bank the chattel mortgage here sought to be foreclosed, purporting to mortgage live stock and farm machinery upon the ranch as his own, which live stock and farm machinery was the property of Collins and in which Adkins had no property interest. Collins did not learn of Adkins having executed either of these notes or the chattel mortgage purporting to secure them until the late fall of 1922, many months after their maturity, when the bank for the first time demanded that he pay them. We note in this connection that Collins did not learn before that time of the giving to the bank by Adkins of any of the prior notes for which the $4,950 note may have been in some measure a renewal. We further note in this connection that the bank never demanded payment from Collins of the previous loans made by it to Adkins evidenced by the notes of August 30th and November 6th, 1918, paid with the $4,100 furnished by Collins.

It is somewhat difficult to follow counsel for the bank, but, as we understand them, it is first contended that Collins is liable upon the notes because of the nature of the agency of Adkins. It may be here noted that this does not appear to be a case of undisclosed principal, for the bank, as seems clear from the evidence, was, at all times after the payment of the notes of August 30 and November 6, 1918, assuming, in making the loan here in question, that Adkins was acting for Collins, and that the signing of the notes by him

was, in legal effect, a signing of them for Collins. Our negotiable instrument statute seems to answer this contention, unless Adkins' name was an assumed trade name of Collins in the operation of the ranch, a question we will presently notice. Referring to sections of Remington's Compiled Statutes, we read:

"§ 3409. No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed his own name." Rem. Comp. Stat., § 3409.

"§ 3410. The signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency." Rem. Comp. Stat., § 3410.

These statutory provisions were given full force and effect in our decision in *Frazey v. Casey*, 96 Wash. 422, 165 Pac. 104. Therefore, viewed apart from the suggested trade name question, it seems plain that these notes must be regarded as the personal obligations of Adkins alone, since the signature of Collins does not appear upon either of them either as maker, endorser or otherwise.

To escape the result of the provisions of the negotiable instrument statute above noticed, it is contended that the name "H. Adkins" was, in legal effect, the trade name of Collins in the operation of the ranch. We do not think the evidence warrants such a conclusion as a matter of fact, nor do we think the bank was at all warranted in assuming such a conclusion from any word or act by or imputable to Collins. Clearly, we think there was no holding out to the world that the operation of the ranch was a business conducted for him in the trade name of "H. Adkins." But even if such were the case, we do not think that the bank was

entitled to view Adkins' agency for Collins, using the trade name "H. Adkins," as authorizing him to borrow money for Collins and execute negotiable promissory notes therefor by signing such trade name. In *Coleman v. Seattle National Bank,* 109 Wash. 80, 186 Pac. 275, 12 A. L. R. 108, we held in harmony with the law, as generally declared in other jurisdictions in this country, that general power of an agent to transact business for his principal does not confer upon such agent the power to borrow money and issue the principal's negotiable paper therefor. We there reviewed the question at some length in the light of the law as expressed in 1 Mechem, Agency (2d ed.), § 969; 1 Daniel, Negotiable Instruments (6th ed.), § 292; Tiedeman, Commercial Paper, § 77; 2 C. J. 636; and 31 Cyc. 1381. Our earlier decision in *Seattle Shoe Co. v. Packard,* 43 Wash. 527, 86 Pac. 845, 117 Am. St. 1064, is in full harmony with this view of the law. We conclude that Adkins' agency authority did not empower him to borrow money and issue negotiable paper therefor binding upon Collins.

Some general contentions are made resting upon the theory of estoppel; this upon the assumption apparently that Collins so held himself and his ranch business out to the world as to induce the bank to assume that Adkins had authority to borrow money and issue negotiable paper therefor binding upon Collins. Practically the only thing that can be said to lend support to such a theory is the knowledge acquired by Collins in the late fall of 1918 that Adkins had borrowed $4,000 from the bank, evidencing such borrowing by the notes of August 30th and November 6th, 1918, and that the same not being paid, Collins, in March, 1919, furnished the money for the payment of those notes. This, we think, did not warrant the bank in assuming that thereafter Adkins was authorized to borrow money and

issue negotiable paper therefor personally binding upon Collins. Collins never learned of any later borrowing by Adkins or the issuance of negotiable paper therefor by him until the late fall of 1922, and in the meantime, as we view the evidence, did nothing to lead the bank to believe that Adkins had any such authority. We think that in no view of the case can it be said that Collins ought to be estopped from denying liability upon the notes here sued upon. The mortgage executed by Adkins here sought to be foreclosed was clearly beyond his agency authority.

We conclude that the judgment and decree of the trial court must be in all things affirmed. It is so ordered.

TOLMAN, C. J., BRIDGES, MAIN, and ASKREN, JJ., concur.