[No. 35918. Department One. September 27, 1962.]

M. L. LAMB, *Respondent*, v. GENERAL ASSOCIATES, INC. *et al.*, *Appellants.**

*Reported in 374 P. (2d) 677.

*Don Sullivan* (of *Sullivan & Jones*), for appellant General Associates, Inc.

*Shirley Boyd Williams*, for appellant Old American Life Co.

*McMannis & Schauble* and *Donald L. Burcham,* for respondent.

ROSELLINI, J.—The plaintiff in this action alleged in his complaint that an agent of the defendants, one Ralph Stachon, had fraudulently procured from him the loan of $10,000 to be used for the financing of the construction of a social center at Kennewick; that defendants' agent represented to the plaintiff that debenture bonds to secure the repayment of the loan would be issued to him bearing interest at the rate of 8 per cent per annum; that the money had not been repaid, and that Ralph Stachon had stolen and embezzled the same.

The plaintiff alleged that he had a right to rely on Stachon's representations because he had previously sold him insurance policies and stocks of the defendants, and that the defendants had faithfully complied with the contractual obligations. He further alleged that the defendants knew, or in the exercise of reasonable diligence should have known, that Stachon was dishonest, but nevertheless suffered and permitted him to continue to act as their agent, thereby making the fraud and embezzlement possible.

In their answers, the defendants denied that Stachon acted as their agent and also denied that they were negligent in hiring him. As an affirmative defense, they alleged that the action of the plaintiff was barred by the statute of limitations.

The cause was tried to a jury, before whom evidence was

introduced tending to show that Stachon was hired by the defendant Old American Life Co., in 1951 or 1952, to sell insurance in the Pullman area. He set up an office in Pullman, designating it the "Old American Agency," and himself "Manager."

The plaintiff, a farmer in that area, had previously purchased stock in the Old American Company (a corporation organized for the purpose of holding all of the stock of the Old American Life Co.), and was advised by letter from the home office of that company or the Old American Life Co. that Ralph Stachon was to be the Old American representative in his area. Stachon called on the plaintiff, sold him policies of life insurance, and won his confidence.

In May 1955, Stachon represented to the plaintiff that the defendant General Associates, Inc., and Old American Company were financing a social center in Kennewick and were issuing debenture bonds paying 8 per cent interest in connection therewith, and induced the plaintiff to give him a check for $5,000. No bonds were received by the plaintiff, but Stachon paid him interest on the loan regularly.

In the following year, Stachon induced him to loan $6,000 to Old American Company for three months at 3 per cent interest; this loan was repaid by Stachon. In May 1956, he secured from the plaintiff another check for $5,000 to be invested in the debenture bonds that he represented were being issued to raise money to finance the Kennewick social center. This sum was not repaid, and no bonds were furnished, but the interest was paid, as in the case of the loan made in May 1955.

Subsequently, Stachon obtained on behalf of General Associates, Inc., another $5,000 loan. Unlike the other checks, which were made out to "Old American Agency" and never reached the attention of the officers of the corporations, this check was made payable to General Associates, Inc. Stachon took it to the secretary of the corporation. He told her it was made out to the corporation by mistake and should have been made to him personally;

and she endorsed it to him. This sum he later repaid to the plaintiff.

Stachon paid interest on the $10,000 which was advanced for debenture bonds until 1958. Subsequently, he gave the plaintiff a check for $1,000 for the purchase of a station wagon. This check was returned, showing insufficient funds in his account. At this point, the plaintiff's suspicions were aroused and he began an investigation, which disclosed that Stachon had not been acting for the defendants when he procured the loans. When it appeared that he would not, or could not, repay the loans, the plaintiff instituted this action against the defendants herein. Old American Life Co. is a party defendant because Old American Company was dissolved, and Old American Life Co. is its successor.

It is undisputed that Stachon had no actual authority to solicit loans or sell debenture bonds on behalf of any of the corporations that he purported to represent. He had been authorized to sell stock of General Associates, Inc. at one time, but he was not a licensed broker. He also sold some stock of Old American Company, or Old American Life Co., but the evidence tended to show that this was not stock offered for sale by the corporations, but was stock held by shareholders. It is also undisputed that the corporations did not finance and did not contemplate financing the Kennewick social center; and their boards of directors did not authorize the borrowing of money or the issuing of bonds for this purpose.

The testimony of the plaintiff was that he trusted Stachon and relied upon his representations that he was authorized to represent General Associates, Inc. and Old American Company, and to borrow money on their behalf. There was no evidence that he was ever employed as an agent of either of these companies, but it was the contention of the plaintiff that they were so closely associated with Old American Life Co., which did hire Stachon as an insurance agent, that they should be treated as one and the same.

For the purposes of this opinion, we will assume that there is merit in this contention.

The court instructed the jury that it could find in favor of the plaintiff if it found that Stachon had apparent authority to solicit loans on behalf of the companies, or that they were negligent in hiring him. A verdict was returned in favor of the plaintiff, awarding him $5,000.

Both defendant corporations appealed, filing separate briefs. They assign numerous errors in the admission of evidence and in the giving and refusing of instructions, and other rulings of the trial court. Their chief contention is that the evidence does not support the verdict; and this contention is meritorious and decisive of the case.

It is a general rule, and the rule in this state, that a corporation may be bound by the contracts or agreements of its agent if within the apparent scope of the agent's authority, although the contract may be beyond the scope of his actual authority. *Peninsular Sav. & Loan Ass'n v. C. J. Breier Co.,* 137 Wash. 641, 243 Pac. 830; *Livieratos v. Commonwealth Sec. Co.,* 57 Wash. 376, 106 Pac. 1125; *Brace v. Northern Pac. R. Co.,* 63 Wash. 417, 115 Pac. 841.

It is also the well-established rule that the apparent or ostensible authority of an agent can be inferred only from acts and conduct of the principal. *Nichols v. McDougal,* 175 Wash. 536, 27 P. (2d) 699; *Bowles Co. v. Clark,* 59 Wash. 336, 109 Pac. 812. The extent of an agent's authority cannot be established by his own acts and declarations. *Stouffer-Bowman, Inc. v. Webber,* 18 Wn. (2d) 416, 139 P. (2d) 717; *Nichols v. McDougal, supra; Allen v. Farmers' & Merchants' Bank of Wenatchee,* 76 Wash. 51, 135 Pac. 621.

The burden of establishing agency rests upon the one who asserts it. Facts and circumstances are sufficient to establish apparent authority only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordi-

nary prudence to make further inquiry. *Olsson v. Hansen,* 50 Wn. (2d) 199, 310 P. (2d) 251.

■ A principal may be estopped to deny that his agent possesses the authority he assumes to exercise, where the principal knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he possesses the authority exercised, and avails himself of the benefit of the agent's acts. *Pagni v. New York Life Ins. Co.,* 173 Wash. 322, 23 P. (2d) 6, 93 A. L. R. 1325.

In this case, there is no question but that the defendants were ignorant of Stachon's activities in obtaining loans from the plaintiff, and nothing occurred that would put them on notice of these activities or arouse their suspicions until some time after the loans had been obtained. They derived no benefit from any of the loan transactions with the plaintiff. They did not authorize Stachon to seek loans. They did permit him to conduct his agency under the designation of "Manager" of the "Old American Agency." The agency, however, was limited to the selling of insurance and activities incident thereto, and the selling of some stocks of General Associates, Inc.

The plaintiff's testimony showed that he relied entirely on the representations of Stachon, whom he personally trusted, when he loaned him money for use by the corporations he purported to represent. He knew that Stachon was in the business of selling insurance, and that his agency was an insurance agency. He was also aware, shortly after the first loan was made, that no bonds were forthcoming and that the interest on the loan was being paid by Stachon, or his agency, rather than by the home offices of the corporations.

In 55 A. L. R. (2d) 1215, we find the subject "Authority of agent to borrow money for principal" annotated. The annotated case is *Mattice v. Equitable Life Assur. Soc. of United States,* 270 Wis. 504, 71 N. E. (2d) 262, 55 A. L. R. (2d) 1206. It is a case directly in point. The material allegations of the complaint were that for many years, the

defendant Equitable Life Assurance Society was represented in Baraboo, Wisconsin, and vicinity, by one Schroeder, as its agent; that during all of this time, Schroeder extensively advertised throughout the said community that he was the agent of the defendant; that the defendant likewise represented to the community that he was its local agent; and authorized to accept money for it; and that during all of the said time Schroeder did in fact regularly transact the defendant's business in the community and accept money for it, as its agent.

It was alleged that the plaintiff had desired to purchase an annuity policy but did not have sufficient funds to do so; that Schroeder advised her that she should loan what funds she had available to the defendant, who would pay her interest, and that when sufficient interest had accumulated, she could then purchase the annuity; that several sums were obtained from her in this manner, and that in each instance Schroeder gave the plaintiff a promissory note executed by himself as owner of the C. W. Schroeder Agency, and told her that it was to serve only as a receipt until the proper papers acknowledging the indebtedness were forthcoming from the defendant.

The plaintiff alleged that she had inquired on several occasions when the papers would be forthcoming, and was told that they would arrive in due course; that she relied upon the representations of Schroeder; that the money was never repaid and the defendant refused to recognize the obligation; and that it was her belief that the money had been converted by Schroeder to his own private uses and purposes.

The jury returned a verdict for the plaintiff, and the defendant appealed.

After referring to the general principles of agency law, which we have heretofore set forth, the Wisconsin court said:

"The main issue presented by this case is whether or not the agent had apparent authority to bind his principal in the particular transaction. The particular transaction was the borrowing of money on behalf of the principal

by the agent. Accordingly, we must look to the rules dealing with the apparent authority of an agent to borrow money on behalf of his principal.

"In Restatement, 1 Agency, p. 178, sec. 74, the law with respect to an agent borrowing money on behalf of his principal is stated as follows:

" 'Unless otherwise agreed, an agent is not authorized to borrow unless such borrowing is usually incident to the performance of acts which he is authorized to perform for the principal.'

"In 2 C. J. S., Agency, p. 1294, sec. 110, the rule is stated as follows:

" 'Like other specific powers of an agent, the power to lend or borrow money is not to be inferred without clear evidence of such a grant, and must be either expressly conferred or necessarily implied from the authority granted, not being subject to implication from a mere general authority, unless the character of the business or the duties of the agent are such in nature as to render it reasonably requisite for him to borrow or lend in order to carry out his instructions and the duties of his office, although, of course, if the agent is clothed with ostensible authority to borrow, transactions of that nature within the scope of his apparent powers will be sustained. Representations by the agent himself are insufficient as a basis for any such ostensible power. While a course of conduct of the principal in allowing the agent to borrow on his account may, under the general rules as to a course of conduct, be a sufficient foundation for the power to borrow, no such power is to be implied from a power merely to manage or act for the principal in his business generally or in other specific matters, unless such authority is reasonably necessary to enable the agent to execute his authority, and then only within the limits of such necessity; such an agent is without the authority to pledge the principal's credit for future payments, and a mere power of management of the principal's business or property, even though accompanied by authority to purchase goods on credit, does not suffice to establish an implied authority of borrowing.

" 'The power being held not to flow by implication from such a broad and general power as that of management, it is, of course, even more to be expected that the courts will hold it, as they do, not to be implied from other more limited mandates such as a power to lend, or a power merely to buy or sell property, or to make deposits and draw or indorse negotiable paper. . . .' "

The court then quoted at length from 2 Am. Jur. 122, § 153, which expounds the applicable principles in accord with Corpus Juris Secundum, and discussed cases which supported the rules stated. Turning to the case at bar, the court said:

"It is conceded that Schroeder had no actual authority to borrow money on behalf of the defendant. There is no testimony in the record tending to show that it was absolutely necessary for Schroeder to borrow money in order to sell insurance and annuities, nor is there any evidence in the record tending to show that it is customary or usual in the insurance business for agents to borrow money on behalf of insurance companies. Authority to borrow money would carry with it the authority to execute notes on behalf of the principal. There is sufficient evidence in the record that Schroeder made the representations claimed by the plaintiff to justify the affirmative answer of the jury that he did so represent to the plaintiff, but representations of the agent alone cannot be the basis for a finding of apparent authority. Apparent authority must be traceable to the principal. We can find no evidence in the record of any acts or representations on the part of the defendant that gave any appearance of authority to Schroeder to borrow money. The defendant was not in the business of borrowing money, it had not authorized Schroeder to borrow money, nor is there any evidence that Schroeder had borrowed money from prospective buyers of insurance or anyone else to the knowledge of the defendant."

The court then held that there was no evidence to support the verdict. The judgment was reversed and the action was dismissed.

Cases cited in the annotation involving insurance agents are in accord with the Wisconsin case. They are *Burlingame v. Aetna Ins. Co.*, 36 App. Div. 358, 55 N. Y. Supp. 287; *Underwood v. Germania Life Ins. Co.*, 152 N. C. 274, 67 S. E. 587; *Exchange Bank v. Thrower*, 118 Ga. 433, 45 S. E. 316; and *Aetna Indemnity Co. v. Ladd*, 135 Fed. 636, cert. denied 199 U. S. 606, 50 L. Ed. 330, 26 S. Ct. 746 (holding that there was evidence tending to show that the defendant, in its dealing with its general agents, recognized their power to borrow money and acquiesced in

their doing so; therefore apparent authority could be found).

 While our research has not disclosed a Washington case concerning the actual or apparent power of an insurance agent to borrow money, we have recognized and applied the rule that the general power of an agent to transact business for his principal does not confer upon such agent the power to borrow money and issue the principal's negotiable paper therefor. *Security State Bank v. Adkins,* 134 Wash. 94, 235 Pac. 18; *Coleman v. Seattle Nat. Bank,* 109 Wash. 80, 186 Pac. 275, 12 A. L. R. 108.

 The principles that guided the Wisconsin court in reaching its decision in *Mattice v. Equitable Life Assur. Soc. of United States,* 270 Wis. 504, 71 N. E. (2d) 262, 55 A. L. R. (2d) 1206, control the case before us. Here, as there, the defendants were not in the business of borrowing money, they had given the agent no authority to do so, and they had not acquiesced in any previous borrowings. There was no evidence of any custom among insurance agents to borrow money on behalf of the companies they represent.

There is only a technical difference in the loans made by the plaintiff in that case and the plaintiff in this case. The plaintiff in the Wisconsin case made the loan for the purpose of accumulating interest to apply on the purchase of an annuity; the plaintiff here made his loan for the purpose of receiving interest on debenture bonds. As defined by the trial court in its instructions to the jury, a debenture bond is an instrument promising to pay for a loan of money to a corporation and such bond is issued by the corporation therefor. It usually creates a charge on the whole or a part of the corporation's stock and property, though not necessarily a mortgage. Such bonds usually have coupons attached to facilitate the payment of interest and they are generally issued in series. The plaintiff's testimony plainly reveals that he understood that he was lending money to the two companies.

It is clear that the evidence failed to establish that

Stachon was acting within his actual or apparent authority when he borrowed money from the plaintiff. Therefore, the defendants cannot be held liable for his loss.

There is some argument made that the defendants were negligent in hiring Stachon, because they knew that he had written checks when he lacked sufficient funds in his account to cover them. This fact, of course, would afford a reason why the defendants should not be heard to complain if he acted dishonestly within the scope of his agency, whether actual or ostensible. But the plaintiff has cited no authority for the proposition which he advances—that a principal's knowledge of its agent's prior dishonest acts, renders it an insurer of that agent's conduct outside the scope of his agency—and, we know of no public-policy consideration which would dictate that the liability of a principal should be extended that far. Until a case is before us in which a legal argument is made supporting the plaintiff's theory, we must assume that none exists.

The judgment is reversed and the action dismissed.

FINLEY, C. J., HILL, WEAVER, and FOSTER, JJ., concur.

November 29, 1962. Petition for rehearing denied.