[No. 9508-4-II. Division Two. September 9, 1987.]

MATTHEW A. STROUD, ET AL, *Plaintiffs,* v. DOUGLAS A. BECK, ET AL, *Defendants,* ARLEY R. CONNER, ET AL, *Appellants,* HERBERT J. DROKER, ET AL, *Respondents.*

---

*James S. Irby* and *Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax,* for appellants.

*Dennis A. Ostgard* and *Schwabe, Williamson, Wyatt & Lenihan,* for respondents.

ALEXANDER, A.C.J.—Arley and Jacqualine Conner appeal an order of the Cowlitz County Superior Court granting a partial summary judgment of dismissal to Herbert Droker and Stuart Sulman, et ux (hereinafter Droker & Sulman) attorneys at law, who acted as escrow agents, and denying a partial summary judgment to the Conners.[1] The Conners contend that the trial court erred in granting summary judgment to Droker & Sulman because as escrow agents they breached their fiduciary duty by failing to (1) inquire into the Conners' agent's authority to execute purchase documents, (2) draw up a nonrecourse note, (3) advise the Conners of the advisability of seeking independent counsel, and (4) send advance copies of the documents to the Conners. We affirm.

The following facts are taken in the light most favorable to the Conners from the evidence submitted in support of the cross motions for summary judgment. Arley Conner and Laurence Flinn had been friends for years. In 1982, Flinn contacted Conner and told him about an opportunity to invest in an apartment complex as a part of a joint venture called the Kelso Investment Group. Conner responded that he was interested in the investment, but that he only wanted to be liable for a $10,000 investment and nothing more. Flinn told him, "There is no way you can lose any money on this." Flinn also told him that the most he could lose was his original investment. With that understanding, Conner agreed to invest $10,000 in order to become a member of the investment group.

Conner and his wife then signed a joint venture agreement and gave Flinn a power of attorney. The Conners did not read either document in detail. The power of attorney authorized Flinn:

(1) To sign [the Conners'] names to the deed of trust Wood Avenue Apts.
(2) To sign [the Conners'] names to the note for Wood

---

[1] Upon stipulation of the parties, the trial court entered an order pursuant to CR 54(b) that there was no just reason for delay.

Avenue Apts.

(3) To execute [on behalf of the Conners] such other documents as may be necessary in connection with the acquisition of Wood Avenue Apts.

(4) To execute a certificate of assumed trade name on behalf of the joint venture for Wood Avenue Apartments.

(5) To execute such documents [on behalf of the Conners] as may be necessary in connection with the conveyance of Wood Avenue Apartments.

Flinn obtained identical powers of attorney from all of the other investors in the joint venture.

The joint venture agreement provided for a management committee, which was comprised of one representative of Flinn, Scheer, and Stewart, Inc. (F.S. & S.) (a corporation dealing in property investments wholly owned by Flinn), and one representative of the individual Kelso Investment Group partners, which included Flinn and his wife, Vicki. The parties to the agreement delegated authority to the management committee to take care of the day–to–day management of the property.

Paragraph 10 of the joint venture agreement provided:

In the event that income received from the operation of the property is not sufficient to cover the operating expenses and the debt service, monies from a previously established reserve fund will be used for that purpose. *In the event that the reserve fund is not sufficient to cover the operating expenses and debt service, FS & S shall be required to contribute 100% of the amount needed.*

(Italics ours.) Paragraph 11 of the agreement provided, in pertinent part:

Except as herein provided no party to this Joint Venture agreement may borrow money on behalf of the Joint Venture, . . . without the express written permission of the management committee.

Flinn and his wife signed a contract on November 8, 1982, on behalf of the Kelso Investment Group to purchase the Wood Avenue Apartments from Matthew and Linda Stroud. The agreement, as later amended, called for the buyers to sign two promissory notes, one of which was for $353,000, payable to the sellers and to be secured by a deed

of trust in favor of the sellers. Flinn then contacted the law firm of Droker & Sulman to act as escrow agents in connection with the closing of the transaction. Scott Smouse, an associate of that firm, handled the closing transaction for the law firm.

Flinn provided Smouse with the documents relating to the purchase, including the joint venture agreement and the powers of attorney executed by each of the individual Kelso Investment Group investors. Flinn instructed Smouse to prepare two promissory notes, a deed of trust, and other necessary closing documents in accordance with the terms of the contract.

Smouse said that he reviewed the powers of attorney and the joint venture agreement and then prepared the promissory notes and deeds of trust showing Flinn and the individual investors as comakers. He said that he used documents which contained "standard provisions which are typically used in the type of transaction at issue." Smouse did not communicate with the individual investors other than Laurence and Vicki Flinn. Flinn signed promissory notes for the purchase of the property in the amount of $25,000 and $353,000 in his own name and the names of the individual partners.

After the transaction closed, Flinn gave the Conners an investment notebook that contained copies of all of the documents related to the sale. Conner said that he did not look through the documents in the notebook before 1985. The Conners subsequently reported tax losses from the project which exceeded their $10,000 investment.

In April 1985, Matthew and Linda Stroud filed a complaint in superior court to foreclose on the deed of trust after the joint venture defaulted on the $353,000 note. They named all of the individual Kelso Investment Group investors, including the Conners and Flinns, as defendants. The Conners in turn filed a third party complaint against Droker & Sulman, alleging that as escrow agents they had negligently breached their fiduciary duties to the Conners.

The Conners moved for a partial summary judgment

against Droker & Sulman on the third party claim on the liability and proximate cause issues. Droker & Sulman cross–moved for summary judgment on liability. The trial court denied the Conners' motion and granted summary judgment to Droker & Sulman. The Conners appeal to this court.

Droker & Sulman initially contend that the Conners have no right of action against them as escrow agent because they had no contract with them. They cite *Bowman v. John Doe,* 104 Wn.2d 181, 704 P.2d 140 (1985), for the proposition that a nonclient must establish that he or she is a third party beneficiary of the attorney–client relationship. We hold that the Conners were entitled to bring a cause of action against Droker & Sulman.

A principal may bring an action on the contract of his agent. *United States v. Skinner & Eddy Corp.,* 5 F.2d 708, 711 (D.C. Wash. 1925). *See also Styner v. England,* 40 Wn. App. 386, 388, 699 P.2d 234 (1985). Clearly, Flinn was acting as the agent of the joint venturers in their dealings with the sellers. The Conners, as principals of the joint venture, had privity of contract with Droker & Sulman through their agent, Flinn. The Conners, thus, have standing to claim a breach of fiduciary duty.

The Conners contend that the trial court erred in determining, as a matter of law, that the escrow agent did not breach its fiduciary duty to the Conners.

On a motion for summary judgment, the reviewing court, as the trial court, views the facts in the light most favorable to the nonmoving party. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). A court should grant a motion for summary judgment only when there are no genuine issues of material fact before the court, and the moving party is entitled to judgment as a matter of law. *Peterson v. Pacific First Fed. Sav. & Loan Ass'n,* 23 Wn. App. 688, 690, 598 P.2d 407 (1979).

A plaintiff alleging negligence must prove (1) the existence of a duty owed to the plaintiff, (2) breach of that duty, (3) proximate cause, and (4) resultant injury. *See*

*Hartley*, 103 Wn.2d at 777. In light of these well known principles, we examine each of the escrow agent's alleged acts of negligence in turn.

## A
### INQUIRY INTO FLINN'S AUTHORITY

The Conners first argue that Scott Smouse, as the escrow agent, negligently breached his fiduciary duty by relying on the powers of attorney without inquiring further into Flinn's authority to execute the closing documents on behalf of the joint venture. We disagree.

■ The authority to execute or endorse commercial paper, such as bills, notes, and checks, must be conferred expressly, *Coleman v. Seattle Nat'l Bank,* 109 Wash. 80, 84–85, 186 P. 275, 12 A.L.R. 108 (1919). If a person has been put on notice of limitations of an agent's authority, the person has a duty to inquire into the limitations, and if he fails to do this, he will be deemed to have actual knowledge of the agent's lack of authority. *Glendale Realty, Inc. v. Johnson,* 6 Wn. App. 752, 757, 495 P.2d 1375 (1972).

Here, all of the individual partners gave their express authority to Flinn, in the form of their powers of attorney, to sign their names to the note for the purchase of the Wood Avenue Apartments. Possessed of these powers of attorney, Flinn clearly had express authority to sign the note for the purchase of the Wood Avenue Apartments on behalf of the joint venture, and Smouse was not negligent in failing to question that authority.

Nevertheless, the Conners argue that the express authority described in the power of attorney was inconsistent with the joint venture agreement and, thus, Smouse was put on notice of Flinn's lack of authority. The Conners reason that because the agreement provided in paragraph 11 that no member could borrow on behalf of the joint venture *without the express written consent of the management committee,* the powers of attorney were insufficient authority in the absence of written consent by the management committee. This argument is flawed.

According to the terms of the joint venture agreement, the management committee was to be made up of one representative from the individual Kelso investment partners and one representative from F.S. & S. Because the individual joint venturers gave Flinn their express powers of attorney, and Flinn, as representative of F.S. & S., signed his name to the note, Smouse was presented with substantial evidence that each member of the management committee had given his or her consent to the purchase. Under these circumstances, Smouse was justified in not inquiring further into the limits of Flinn's authority, at least insofar as the purchase of the Wood Avenue Apartments transaction was concerned.

In any event, the Conners, by their actions, have ratified Flinn's authority to execute the note on their behalf. "For a principal to be charged with the unauthorized act of its agent by ratification, it must act with full knowledge of the facts or accept the benefits of the act or intentionally assume the obligation imposed without inquiry." *Swiss Baco Skyline Logging, Inc. v. Haliewicz,* 18 Wn. App. 21, 32, 567 P.2d 1141 (1977). Furthermore, "a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents." *National Bank v. Equity Investors, Inc.,* 81 Wn.2d 886, 912, 506 P.2d 20 (1973).

Here, the Conners were provided with copies of all of the legal documents in connection with this transaction. Although the Conners said that they did not read these documents, they ratified Flinn's authority by assuming the obligation without inquiry and by accepting tax benefits from the real estate transaction without question.

## B
### FAILURE TO DRAW UP A NONRECOURSE NOTE

The Conners next argue that Smouse negligently breached his fiduciary duty by failing to draft a nonrecourse note. They contend that because the joint venture agreement provided that F.S. & S. would assume liability

for 100 percent of operating expenses after depletion of the reserve fund, Smouse was on notice that the Conners did not intend to be liable for more than their $10,000 original investment. We reject this argument. The fact that the partners had an agreement among themselves relating to liability for operating expenses was insufficient to put Smouse on notice that the members of the joint venture wished to limit their liability to third parties to $10,000. This seems particularly true in view of the fact that each of the members of the investment group had given Flinn the power of attorney to sign documents on his or her behalf.

## C
### FAILURE TO ADVISE THE PARTIES OF THE ADVISABILITY OF SEEKING INDEPENDENT COUNSEL

The Conners' principal appeal issue focuses on whether or not Smouse negligently breached his duty as an escrow agent by failing to advise the Conners of the advisability of seeking independent counsel. Although Smouse may have breached a duty to advise Flinn, we hold, as a matter of law, that this breach did not proximately cause the Conners' loss.

The court in *Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 675 P.2d 193 (1983) noted that an attorney escrow agent must meet the standards of the legal profession, including the Code of Professional Responsibility. *Bowers,* 100 Wn.2d at 588. Under the Code of Professional Responsibility DR 5–105(B), a lawyer is prohibited from continuing multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under CPR DR 5–105(C). Under CPR DR 5–105(C):

> a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

The court in *Bowers* thus concluded that an attorney who acts as an escrow agent must provide each client with the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if the client desires. *Bowers,* 100 Wn.2d at 590. The court in *Bowers* did not restrict this rule only to those transactions which appear to be irregular.

Although Scott Smouse may have breached his duty as an attorney by failing to advise each party to the transaction of the advisability of seeking independent counsel, it does not follow, necessarily, that an attorney who represents members of a joint venture on one side and the seller of the real estate on the other side, must advise each member of the joint venture separately concerning the advisability of seeking independent counsel. This is a question of first impression in Washington, and we hold that the escrow agent has a duty only to advise the duly authorized representative of the joint venture, and not each member of the joint venture separately, absent notice of divergent interests of the individual investors.

The Oregon Supreme Court in *In re Samuels,* 296 Or. 224, 674 P.2d 1166 (1983) addressed a similar issue. In that case, it was contended that an attorney who rendered legal services in conjunction with forming a partnership violated Oregon's disciplinary rules, DR 5–105(A) and (C), which are substantially similar to Washington's CPR DR 5–105(A) and (C), by representing the conflicting interests of the individual partners without warning each partner of the advisability of seeking independent counsel. The Oregon court rejected this contention, finding no evidence that the individual partners had conflicting or inconsistent interests at the time of the formation of the partnership. *Samuels,* 674 P.2d at 1171. The court concluded that because there was a "community of interest" among the partners at the time the partnership was created, there was no breach of the duty under DR 5–105(A), and the partners were not required to be advised of the advisability of seeking independent counsel under DR 5–105(C). *Samuels,* 674 P.2d at

1171.

As in the Oregon case, there is no evidence here that Smouse was either aware or should have been aware of conflicting or divergent interests among the joint venture members at the time the joint venture entered into the real estate agreement. On the contrary, the members of the joint venture had given their powers of attorney to Flinn to handle the transaction. Therefore, Smouse had no notice of divergent interests, and he should be under no duty to advise each individual partner of the joint venture concerning the advisability of seeking independent counsel.

As noted above, Smouse perhaps should have advised Flinn, as the representative of the buyer (the joint venture), and the sellers (the Strouds), of the advisability of seeking independent counsel. Yet even if Smouse had done this, and even if Flinn had obtained independent counsel on behalf of the joint venture, an attorney representing the joint venture would not have had any way of knowing that the Conners, as individuals, wished to limit their liability to $10,000. Therefore, even if Smouse breached his duty to advise Flinn, as representative of the joint venture, the breach cannot be said to have proximately caused the loss to the Conners.

## D
### ADVANCE COPIES OF DOCUMENTS

The Conners finally contend that Smouse breached his duty as an escrow agent by failing to send them, and all of the other individual joint venture investors, advance copies of all of the closing documents. Although this practice would appear to be prudent, neither *Bowers v. Transamerica Title Ins. Co., supra,* nor *National Bank v. Equity Investors, Inc., supra,* has expressly required this, and the Conners have not cited any authority for this proposition. *See Lassila v. Wenatchee,* 89 Wn.2d 804, 809–10, 576 P.2d 54 (1978).

In summary, the trial court did not err in granting summary judgment to Droker & Sulman. Because we affirm the

granting of the summary judgment, we need not address the Conners' contention that the trial court erred in denying their motion for partial summary judgment.

We affirm the decision of the trial court.

PETRICH and WORSWICK, JJ., concur.