**TEXAS HARDWARE & IMPLEMENT MUT. FIRE INS. CO. et al. v. DALLAS TRUST & SAVINGS BANK. (No. 2028.)**

Court of Civil Appeals of Texas. El Paso. May 5, 1927.

Rehearing Denied June 2, 1927.

**1. Banks and banking ⚖➝130(3)—Acceptance of checks for deposit without payee's indorsement to its treasurer's credit impressed deposit with trust character.**

Deposit to credit of insurance company's treasurer, who had personal account in bank, issuance of passbook and taking of signature card from him in such capacity, acceptance for deposit of checks, payable to company, without its indorsement, and stamping "credit to account of payee" on back of each, impressed deposit with trust character, charged bank with notice thereof, and made it asset of insurance company.

**2. Witnesses ⚖➝266½—Testimony on cross-examination, confessing and avoiding effect of previous testimony, does not affect latter's competency.**

That witness testifies on cross-examination to facts confessing and avoiding effect of his previous testimony does not affect competency and admissibility of evidence first given.

**3. Banks and banking ⚖➝154(5)—That check on which payee's indorsement was alleged to have been forged should be treated as payable to fictitious person held special defense required to be pleaded by bank sued for amount paid thereon.**

That check, on which names of payee and insurance company's treasurer, who signed it, were indorsed, was drawn under circumstances requiring that it be treated as payable to fictitious person, was special defense in confession and avoidance of plaintiff insurance company's allegation that payee's indorsement was forged, and hence unavailable, where not pleaded by defendant bank when sued for amount paid thereon.

---

⚖➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Banks and banking ☞154(7)—Payee's testimony as to unauthorized indorsement of his name on check held admissible, notwithstanding his testimony on cross-examination.**

In action against bank for money paid on check of plaintiff corporation's treasurer, court erred in excluding payee's testimony that indorsement of his name on back was not authorized, though he testified on cross-examination that neither plaintiff nor its treasurer owed him any money, and that he sustained no loss by such indorsement.

**5. Banks and banking ☞130(3)—Bank's payment of money on checks of corporation's treasurer, with knowledge of circumstances indicating misappropriation by him, held not such participation therein as to render it liable to company.**

Though facts impressed deposit by insurance company's treasurer with trust character and charged bank with notice thereof, it was bank's duty to honor checks drawn against account by treasurer, notwithstanding its knowledge of circumstances indicating that he was misappropriating money, and payment thereof did not constitute such participation by bank in misappropriation as to render it liable to cestui que trust.

**6. Banks and banking ☞130(3)—Bank, whose teller consented to passing corporation treasurer's check to credit of his personal account in payment of overdraft, held liable to corporation for misappropriation of fund.**

Bank, whose exchange teller knew of and consented to passing of check, drawn by insurance company's treasurer on its account, to credit of his personal account in payment of overdraft thereon, so participated in treasurer's misappropriation of fund as to render it liable to company, though check indorsed by payee should be treated as payable to bearer.

**7. Banks and banking ☞130(3)—Bank's ledger entries as of Monday following Saturday, on which checks were drawn, held not to alter fact of overdraft on Saturday as regards bank's liability for depositor's misappropriation.**

Bank's ledger entries of deposit and checks as of Monday following Saturday on which made and drawn *held* not to alter fact of overdraft, created by accepting personal checks of insurance company's treasurer as deposits to credit of his account as treasurer, so as to render bank liable to company as participant in treasurer's misappropriation of fund by subsequently passing his check as treasurer to credit of his personal account in payment of overdraft.

**8. Limitation of actions ☞127(3)—Amended petition, describing check paid by defendant bank as dated later than originally alleged, and alleging forgery of payee's indorsement, held not to set up new cause of action, barred by statute.**

In action against bank for money paid from plaintiff corporation's account on its treasurer's personal check described in petition as dated on or about September 2d, amended petition, describing check as dated September 23d, and alleging that payee's indorsement was forged, *held* not to set up new cause of action, barred by two-year statute of limitations.

**9. Banks and banking ☞130(3)—Bank crediting fund to corporation's treasurer, opening account with checks payable to it, held not liable for his misappropriation.**

Bank placing fund to credit of depositor as treasurer of insurance company, with knowledge that checks, with which account was opened, were payable to company, *held* not to have participated in treasurer's breach of trust, so as to become liable to company for his misappropriation of funds paid out on his checks thereon; he having implied authority, as authorized custodian of company's funds, to open account in such manner.

**10. Corporations ☞414(5)—Bank could assume that corporation's treasurer had authority to check against deposit for corporation in his name.**

In absence of actual knowledge to contrary, bank was authorized in assuming that corporation's treasurer, making deposit for it, had authority from it to check against deposit in his name as treasurer.

**11. Banks and banking ☞154(7)—Treasurer's checks, with corporation's name printed thereon, held admissible to affect bank with notice of corporation's ownership of fund.**

In insurance company's action against bank for moneys paid from its account on its treasurer's checks, such checks, on face of which company's name was printed, were admissible for purpose of affecting bank with notice of company's ownership of fund.

**12. Trial ☞56—Exclusion of competent evidence is error, notwithstanding admission of other evidence of same fact.**

Exclusion of competent evidence is error, though other evidence establishes same fact, as parties have right to offer all competent evidence they have on issue.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by the Texas Hardware & Implement Mutual Fire Insurance Company and another against the Dallas Trust & Savings Bank. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Beall, Worsham, Rollins, Burford & Ryburn and Etheridge, McCormick & Bromberg, all of Dallas, for appellants.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellee.

HIGGINS, J. This suit was filed July 10, 1924, by Texas Hardware & Implement Mutual Fire Insurance Company, hereinafter called insurance company, and the National Surety Company, against Dallas Trust & Savings Bank, hereinafter called bank. A peremptory instruction was given in favor of the bank, and judgment followed accordingly.

The facts out of which the litigation arose are as follows: Chas. B. Smith was treasurer of the insurance company from February 14, 1921, to October 20, 1922. He gave a

fidelity bond as such in the sum of $20,000, with the National Surety Company as surety. Smith appropriated to his own benefit funds of the insurance company amounting to $34,982.10, and the National Surety Company paid to the insurance company the amount of the bond.

This suit was filed upon the theory that the conduct of the defendant bank contributed to a part of the loss occasioned by Smith's conduct; it being agreed by the plaintiffs that any recovery obtained should be divided between them in the proportion that $20,000 bears to $34,982.10.

On September 22, 1922, Smith opened a personal account with the bank by depositing $1,000. Chas. B. Smith, treasurer, opened an account with the appellee on September 23, 1922. This account was opened by the deposit of three checks, each drawn on the personal account of Chas. B. Smith, and each payable to Texas Hardware & Implement Mutual Fire Insurance Company, and aggregating $7,686. These checks were not indorsed, but were stamped on back as follows: "Credited to account of payee;" "Absence of indorsements guaranteed;" each check being dated September 23, 1922, and stamped paid September 23, 1922.

Chas. B. Smith had already drawn checks on his personal account for $80.62 and $256, so that when the checks for $7,686 were honored he was overdrawn $6,922.62. Later, and on the same day, Chas. B. Smith presented to the bank a check for $7,062.52, dated September 23, 1922, payable to the order of J. C. Eatherly, signed Chas. B. Smith, treasurer, and indorsed on the back J. C. Eatherly, Chas. B. Smith. This check was stamped on its back, "Exchange Teller, Sept. 23, 1922."

When this check was presented request was made for cashier's check. It had written on it, "CC for." "CC for" meant a cashier's check was to be issued for the check presented. The teller to whom it was presented suggested that Mr. Smith write a new check and deposit to his account. Smith did not write a new check, but scratched out "CC for" and then deposited it to his individual account. When this check was deposited to Smith's individual account, the overdraft which had theretofore existed in the sum of $6,922.62 was protected, and a balance of $39.88 was left.

J. C. Eatherly was called as a witness by plaintiffs, whereupon the jury was retired at suggestion of defendant. The bill of exception discloses that upon this preliminary examination of Eatherly he first testified in response to questions propounded to him by appellant's counsel that he did not indorse the above check, did not authorize any one to do so for him, and did not receive any of the proceeds of the check. Upon cross-examination by defendant's counsel he testified the insurance company did not owe him any money, nor did Smith, and he did not sustain any loss by the unauthorized endorsement of his name upon the check. Upon objection by defendant, Eatherly was not permitted to testify to the matter which the appellants offered to prove by him.

When Smith made the deposit in the name of Chas. B. Smith, treasurer, he ordered checks to be printed by the bank, which checks were printed by the bank and delivered the following Tuesday, or September 26, 1922. The checks which Smith requested the bank to have printed, and which were printed and afterwards delivered, had upon the face thereof, "Texas Hardware & Implement Fire Ins. Co." and on the back of each check was printed a series of blank lines above the words: "Approved:————, Secretary."

The appellants offered this check book in evidence as a circumstance to show that the appellee, at the time it opened the account, received instructions to print the checks and received the information printed thereupon, to the effect that the account belonged to the Insurance Company, and that each check was to be approved by the Secretary of the Company on the back before payment. The court sustained objection to the admission of these checks.

The Chas. B. Smith, treasurer, account was closed October 21, 1922, while the Chas. B. Smith personal account was not closed until March 6, 1923. The slip evidencing the deposit made on September 23d to the credit of Chas. B. Smith, treasurer, lists the items as follows:

"Checks as follows:
| | |
|---|---:|
| Tuttle Ave. loan | $2,810 00 |
| H. K. Smith loan | 3,876 00 |
| Glenn Invt. Co | 1,000 00 |
| | $7,686 00" |

It was shown that loans owned by the insurance company corresponding to those indicated by the slip had been collected by Smith. It is evident the deposit was made to cover those collections. Subsequent to the initial deposit of $7,686 a number of other deposits were made to the account of Chas. B. Smith, treasurer, and checks drawn against the account, other than the Eatherly check, which were honored. The petition sought to recover all of the moneys paid out upon these checks, but appellant in its brief makes no special point respecting any of the disbursements except upon the Eatherly check.

[1] As above stated, Smith had collected for the insurance company certain loans corresponding in amount with the deposit made and the indorsements upon the deposit slip show the deposit was made to cover these collections. The deposit was made to the credit of Chas. B. Smith, treasurer; passbook in that capacity was given and signature card in like capacity taken. The checks were payable to the insurance company and accep*

ed for deposit without the payee's indorsement. On the back of each check was stamped, "Credit to account of payee." All this, coupled with the further fact that Smith had a personal account in his own name with the bank, impressed the deposit with a trust character, made it the asset of the insurance company, and charged the bank with notice of its trust character. U. S. F. & G. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667; Moore v. Hanscom, 101 Tex. 293, 106 S. W. 876, 108 S. W. 150.

With reference to the Eatherly check, it was by the plaintiffs alleged in the amended petition upon which trial was had that Smith, or some one else unknown to them, forged Eatherly's indorsement upon the check, and Smith then indorsed the check in his own name and deposited same to the credit of his individual account, thus appropriating same to his own use and benefit, and defendant applied same to the payment of indebtedness owing to it by Smith. These allegations, if proven, would have shown liability as for the payment of a check against the trust fund upon a forged indorsement of the payee and the money traced back into the bank in payment of Smith's personal indebtedness to it upon his then existing overdraft.

But appellees assert that, when a person draws a check to the order of an existing person, but does so for the drawer's own purposes, and intends that the payee shall have no interest in the check, the check is regarded as payable to a fictitious person, and therefore treated as payable to bearer. There are authorities to this effect. Brady's Law of Bank Checks, § 145; Shipman v. Bank, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; Snyder v. Bank, 221 Pa. 599, 70 A. 876, 128 Am. St. Rep. 780; Phillips v. Bank, 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. Rep. 596.

[2-4] Appellee asserts that the cross-examination of Eatherly shows that the check should be treated as payable to bearer, for which reason the court properly excluded the evidence of Eatherly offered by the plaintiffs showing that Eatherly did not indorse his name upon the check nor authorize any one to do so for him.

What Eatherly testified to upon his cross-examination was merely in avoidance of his evidence given upon direct examination. The fact that a witness upon cross-examination may testify to facts which confess and avoid the effect of his testimony previously given does not affect the competency and admissibility of the evidence first given. The jury may or may not believe that which is testified to in avoidance of the evidence previously given. Again, there was no pleading by defendant that the check was drawn under circumstances which would show that it should be treated as payable to a fictitious person. That this was a special defense in confession and avoidance of plaintiff's allegation that Eatherly's indorsement was forged by Smith, or some one else, is clear.

The court erred in excluding the evidence of Eatherly showing the unauthorized indorsement of his name upon the check. In view of retrial the other propositions presented in the brief will be disposed of.

Assuming that the check was drawn under circumstances which, though not known to the bank at the time it honored the Eatherly check, warrant it now in asserting that the check in effect was payable to bearer, nevertheless, the bank is liable for the reason to be now stated.

[5] While the facts in the case impressed the deposit with a trust character, made it the asset of the insurance company, and charged the bank with notice of its character, it was, nevertheless, the duty of the bank to honor checks drawn against the account by Chas. B. Smith, treasurer. This is true, even though there were circumstances known to the bank indicating that in thus checking the money out Smith was misappropriating it. The payment of the money to, or upon the checks of, the depositor, under such circumstances does not constitute a participation by the bank in a misappropriation by the fiduciary, such as will render the bank liable to the cestui que trust. Bank v. Claxton, 97 Tex. 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep 885; U. S. F. & G. Co. v. Adoue & Lobit, supra.

These same cases, however, recognized and applied the rule that the bank is liable to the cestui que trust, if it participates in and profits by the misapplication of the fund by the trustee. In the Claxton Case Judge Williams quotes with approval from an opinion by Lord Chancellor Cairns as follows:

"In order to hold a banker justified in refusing to pay a demand of his customer, the customer being an executor and drawing a cheque as an executor, there must, in the first place, be some misapplication, some breach of trust, intended by the executor, and there must in the second place, as was said by Sir John Leach in the well-known case of Keane v. Roberts, (1) be proof that the bankers are privy to the intent to make this misapplication of the trust funds. And to that I think I may safely add that, if it be shown that any personal benefit to the bankers themselves is designed or stipulated for, that circumstance, above all others, will most readily establish the fact that the bankers are in privity with the breach of trust which is about to be committed."

Judge Williams also quotes Lord Westbury as follows:

"But then it has been very well settled that, if an executor or a trustee who is indebted to a banker, or to another person having the legal custody of the assets of a trust estate, applies a portion of them in the payment of his own debt to the individual having that custody, the individual receiving the debt has at once not only

abundant proof of the breach of trust, but participates in it for his own personal benefit."

In the Adoue & Lobit Case the bankers Adoue & Lobit made a cash advance to A. J. Compton and on the same day they were advised by another bank that it had forwarded to them its check for $5,000 payable to Compton's order. Thereupon Adoue & Lobit issued to "A. J. Compton, guardian," a deposit receipt for $11,913.83, payable to his order. Later Compton indorsed the certificate in blank and surrendered it to Adoue & Lobit, requesting them to cash it by crediting his account. This they did, thus repaying themselves the $7,000 loan previously made and leaving a balance of $5,000 to Compton's account, which he shortly afterwards withdrew by check. Adoue & Lobit were held liable to a surety upon Compton's guardianship bond, who had been compelled to respond to the legal representations of the estate of the ward for the misappropriation by Compton of the fund. They were held liable not only for the $7,000 which Adoue & Lobit had applied to the payment of Compton's personal indebtedness to them, but also for the $5,000 which Compton had withdrawn by check after it had been credited to his personal account. In this case, as well as in the Claxton Case, the depository seems to have acted without actual bad faith, but they were nevertheless held liable.

[6] Assuming then that the Eatherly check should be treated as payable to bearer, the defendant is liable because the amount of the check was passed directly from the trust account to the credit of Smith's personal account, thus paying the then existing overdraft against the personal account. Apparently, this was done at the suggestion of the exchange teller. In any event it was done with his knowledge and consent. Under the cases cited this constituted such participation by the bank in the misappropriation of the fund as to render it liable.

[7] In this connection appellee asserts there was no overdraft against Smith's personal account; but this is untenable. It was shown by defendant's ledger that on September 23d, the balance to the credit of Smith's personal account did not exceed $1,000. It is further indisputable that upon that date he deposited to the credit of Chas. B. Smith, treasurer, the three checks drawn against his personal account. The deposit slip and other evidence shows this. It is true defendant's ledger shows no overdraft, but this is due to the fact that September 23d was Saturday, and the deposits made to both accounts and checks drawn were entered upon the books on the following Monday, as of the latter date. Therefore at the close of business on the 25th no overdraft at any time would be shown by the ledger against Smith's personal account. But this showing by the ledger does not alter the fact that on September 23d an overdraft was created against Smith's personal account the moment the bank honored his three personal checks by accepting them as deposits to the credit of Chas. B. Smith, treasurer, and this overdraft continued until it was extinguished that afternoon, after regular banking hours, by passing to the credit of the personal account the amount of the Eatherly check. Mere ledger entries made as of a date other than the true date of the credits and debits do not change the actual status of the respective accounts on September 23d.

[8] The amended petition upon which the case was tried was filed October 6, 1925. The original petition described the Eatherly check as dated on or about September 2, 1922. There was no allegation that Eatherly's name was forged. In the amended petition the check was described as dated September 23, 1922, and the allegation of forgery made. Appellee asserts the amendment set up a new cause of action which was barred by the two years' statute of limitations. According to the opinion in Warnock v. Mills, 291 S. W. 850, by the Commission of Appeals, expressly approved by the Supreme Court, the amended petition is not to be regarded as setting up a new cause of action upon the transaction relating to the Eatherly check.

[9] Another proposition submitted by appellants is to the effect that appellee knew the checks with which the account was opened were payable to the insurance company, wherefore appellee had no authority to place the fund to the credit of Smith as treasurer, and in so doing they participated in a breach of trust by Smith and became liable with him.

Smith, as the insurance company's treasurer, was the authorized custodian of its funds. He opened the account and the bank could not take any deposit for his principal except that tendered by him and in whatever name he saw fit to designate the deposit. As such treasurer he had implied authority to open the account in the manner in which he did.

[10-12] Appellants also submit it was error to exclude the checks above mentioned which appellee had printed at Smith's direction. It is contended these checks were admissible to show the bank knew the funds deposited belonged to the insurance company, and also tended to show, by what was printed on the back of the checks, that the bank knew checks drawn against the fund must be approved by the secretary of the insurance company, and in this latter connection it is further contended the court erred in excluding evidence that Smith had no authority to draw checks except on the countersignature of some other officer of the insurance company. Smith was the one who made the deposit, and, in the absence of actual knowledge to the contrary, the bank was authorized in assuming that he had authority from his principal to check against the deposit in his name as treasurer. Coleman v. Bank, 94 Tex. 605, 63 S. W. 867, 86 Am. St. Rep. 871; Bank v. Claxton, supra.

The fact that the name of the insurance company was printed upon the face of the checks indicated it to be the owner of the fund and the checks were admissible for the purpose of affecting the bank with notice of that fact. Other evidence noted above did affect the bank with such notice, but appellants have the right to offer all competent evidence they have upon the issue.

Reversed and remanded.