**INDEPENDENCE INDEMNITY CO. et al.
v. REPUBLIC NAT. BANK & TRUST
CO.**

No. 12301.

Court of Civil Appeals of Texas. Dallas.

Feb. 26, 1938.

Rehearing Denied April 2, 1938.

Albert B. Hall, of Dallas, for plaintiffs in error.

Eugene DeBogory, Thompson, Knight, Baker & Harris, and Pinkney Grissom, all of Dallas, for defendant in error.

YOUNG, Justice.

Plaintiff in error, Independence Indemnity Company, under a fidelity bond with its assured, Matson Navigation Company, sustained certain losses for which it is claimed in this suit that the defendant in error, Republic National Bank & Trust

Company, is responsible, and suit in the trial court resulted. Upon a jury trial in a Dallas county district court, a verdict for defendant was instructed, judgment rendered that plaintiff take nothing, and writ of error has been duly perfected by the indemnity company for review here. The parties will be designated as in the lower court; said Independence Indemnity Company, plaintiff, being now in receivership, C. C. Huff, receiver, was made an additional party before trial.

Matson Navigation Company appointed W. L. Metcalfe its general agent in the Dallas territory, in charge of all of its business in such district, including funds on deposit with defendant bank and collections from sales of transportation; the employment beginning August 15, 1928, and terminating July 31, 1929. Plaintiff had written a bond to the assured, Matson Navigation Company, covering the fidelity of said Metcalfe as agent during the above period, and had been required, under this bond, to pay to the navigation company, prior to suit, the sum of $4,781.76, by reason of an alleged shortage on the part of said agent. During the period of the agency of W. L. Metcalfe, the following letter was presented to defendant bank, marking the commencement of relations of the navigation company, as depositor, with such bank:

"Matson Navigation Company
"Matson Building
"215 Market St.
"San Francisco, California, U. S. A.
"August 23, 1928.
"T 28-8-88
"Republic National Bank,
"Republic National Bank Building,
"Dallas, Texas.
"Gentlemen:
"This letter will be presented by Mr. W. L. Metcalfe, who had been appointed our General Agent at Dallas, Texas. We have in mind the opening of an account with your good selves, to be known as Matson Navigation Company, W. L. Metcalfe, General Agent, and Mr. Metcalfe will deposit our check for $2000.00 to start the account. We presume we will be accorded the usual interest on daily bank balances, as is customary with other Banks throughout the country. Please forward us the forms for resolutions to be passed by our Board of Directors, which will be executed and returned. In the meantime,

this will be your authority for accepting Mr. Metcalfe's signature on checks.
"Yours very truly,
"Matson Navigation Company
"[Signed] A. M. McCarty, Treasurer."

The corporate resolutions referred to in the above letter provided:

"F. A. Bailey, Secretary of the Matson Navigation Company, a corporation, of California, do hereby certify that I am keeper of the records and the minutes of the proceedings of the Board of Directors of said Company, and that on the 24th day of September, 1928, there was held a meeting of the Board of Directors of said Company, which was duly called and held in accordance with law, and the bylaws of the Company, and at which a quorum of the Directors was present; and at said meeting the following action was duly and legally taken:

"Resolved, That an account shall be established in the name of this company with the Republic National Bank and Trust Company of Dallas, under the rules and regulations as prescribed by said Bank, wherein may be deposited any of the funds of this Company, whether represented by cash, checks, notes, or other evidences of debt, and from which withdrawals are hereby authorized in the name of the Company by any one of the following:
"W. P. Roth          A. M. McCarty
"A. C. Diericx       S. G. Walton
"F. A. Bailey        W. L. Metcalfe

"Endorsements for deposit may be by the written or stamped endorsement of the Company, without designation of the party making the endorsement.

"Be it further resolved, That the said Republic National Bank and Trust Company is hereby authorized to honor any and all withdrawals of the Company's funds payable to the officer or agent signing or countersigning the same and whether presented for cash or for credit to the personal account of such officer or agent, and said Bank need make no inquiry concerning such items.

"These resolutions and the authority and instructions given thereby shall pass and inure to any successor or to the assigns of the Republic National Bank and Trust Company of Dallas.

"I further certify that the following persons are the officers of this Company and those authorized to sign in the foregoing resolutions as designated, and that the sig-

natures hereon are the true signatures of such officers and persons.

"[Signed.]  W. P. Roth, President
"[Signed.]  A. C. Diericx, V-President
"[Signed.]  F. A. Bailey, Secretary
"[Signed.]  A. M. McCarty, Treasurer
"[Signed.]  S. G. Walton, for Secretary
"[Signed.]  W. L. Metcalfe, Gen. Agent
"(Seal.)

"In witness whereof, I have hereunto set my hand as Secretary of said Company, and have attached hereto the official seal of said corporation, this ——— day of ———, 19—.

"[Signed.]  F. A. Bailey, Secretary."

On June 19, 1929, said Metcalfe opened an individual account with defendant bank by depositing therein a check for $2,213 with the San Jacinto Trust Company, as maker and drawee. On June 22d following, another deposit was entered to this personal account by a check in the amount of $630, and on July 6, 1929, there was deposited $968.86, all of the above checks being payable to the order of Matson Navigation Company, and are here set forth, in substance:

From testimony upon the trial, it developed that the navigation company during the agency of said Metcalfe had another account with the North Texas National Bank, in which were deposited all moneys collected for services to be rendered through the Dallas office by the navigation company, and Metcalfe was authorized to make regular deposits therein for all business done for his principal, but with no authority of withdrawal · or checking from the North Texas National Bank funds. The deposit in the defendant bank was for salaries and other current expenses of Metcalfe, as agent, denominated a "work fund" and to be replenished from time to time from the San Francisco office. However, no facts of the banking arrangements of the navigation company in the Dallas district were known to the defendant bank, except such as were communicated or imputed to it through the letter and resolutions above quoted. Of the $3,811.86 deposited by Metcalfe in his personal account in said bank, the sum of $2,511.48 was later checked into the navigation company's North Texas

| Amount | Date | Payee | Drawee | Maker | Endorsed |
|---|---|---|---|---|---|
| $2213.00 | 6/15/29 | Matson Nav. Company · | San Jacinto Trust Co. | San Jacinto Trust Co. | Matson Nav. Co. PAY TO The Order of Republic National Bank and Trust Company, Dallas, Texas. W. L. Metcalfe. |
| 630.00 | 6/22/29 | Matson Nav. Company | Commercial Nat. Bank of Shreveport | R. W. Deputy (Travel Service) | Matson Nav. Co. W. L. Metcalfe. |
| 968.86 | 7/ 6/29 | Matson Line | Republic Natl. Bank & Trust Co. | Meriwether Steamship Agency | Matson Line. W. L. Metcalfe. |

About July 15, 1929, the authority of the agent Metcalfe to sign checks on the regular account of the navigation company was cancelled, and, on July 31st following, this personal account of Metcalfe with defendant bank was closed by a letter from said Metcalfe, acknowledging the three checks listed, in the aggregate of $3,811.86, to have been funds of the navigation company, and authorizing the existing balance in said personal account of $15.30 to be credited to the account of the navigation company in such bank. The navigation company obtained knowledge of this personal account of Metcalfe the latter part of July, 1929.

bank account, and an additional $1,000 was paid by Metcalfe on his alleged shortage to the plaintiff, leaving a balance of $1,-300.38, that the plaintiff, indemnity company, has paid under its said liability contract, and for which this suit was filed.

The contentions of plaintiff in the two propositions presented under its assignments of error are: That defendant bank is liable for the entire balance of $1,300.-38, as in conversion, by reason of the bank's participation in the diversion of the three checks totaling $3,811.86 to the personal account of Metcalfe, under circumstances which charged such defendant with notice that Metcalfe was mis-

appropriating said checks; or was at least liable to the amount of $752.88 on two of the checks, in event of no recovery on the third check for $968.86 drawn on defendant bank, Matson Line payee, by reason of its being deposited on July 6, 1929, to the personal account of the agent Metcalfe.

Defendant's contentions are, in effect, that (1) under the undisputed testimony, said Metcalfe had express authority as general agent to so handle the three checks in question, or, if not, apparent authority through the known conduct of his principal, the navigation company, by way of estoppel; (2) no subrogation existed on behalf of plaintiff, since the equities were not equal as between the defendant bank, plaintiff, and the navigation company; (3) no notice of these irregularities was ever given by the navigation company to the defendant bank, as had been contracted at the time of the initial deposit by the navigation company in the bank; and (4) no liability resulted in anywise by the deposit to Metcalfe's personal account of the check for $968.86.

■ Were the acts of Metcalfe, as general agent of the navigation company, in opening and conducting an individual checking account with funds of his principal at the defendant bank, authorized? We have concluded in the negative. The letter of August 23, 1928, above set forth, plainly stated: "We have in mind the opening of an account with your good selves, to be known as Matson Navigation Company, W. L. Metcalfe general agent"; and the reference in said letter to later resolutions indicated that Metcalfe's authority was to extend no further than signing checks for withdrawals from this account. The signature card was to the same effect that, "The duly authorized signature hereto you will recognize in payment of funds or the transaction of other business with reference to said account." The resolutions did not enlarge such power, being entirely with reference to withdrawals therefrom. In the handling of the company's business, it provided no further than that the agent could withdraw in cash, or for credit to this personal account, moneys originally in the company's regular account in said bank. The navigation company could thus keep accurately informed of the condition of such funds, through monthly or even more frequent statements. "The opening of an account" and the request for in-

terest on daily balances, referred to in the above letter, excluded the idea of authority on the part of Metcalfe, even as the general agent, to open an individual account in the same bank with company funds. Could interest on daily balances accrue as to moneys not in the account thus opened?

Defendant bank contends that, under the navigation company's letter and resolutions, Metcalfe, as general agent, indisputably could have indorsed these checks and deposited same in the regular account of his principal, and then could have properly withdrawn the proceeds thereof for deposit in his own personal account; and that Metcalfe was thereby fully authorized to do indirectly what was done directly in the case at bar. Even from the standpoint of defendant, Metcalfe had only implied authority to deposit these checks in the company's regular account with such banking institution. Actually, such agent's authority as to the checks in question was to indorse them for deposit only with another and different bank, but defendant did not know of this limitation upon such agent's powers.

■ The fact of general agency does not necessarily imply the authority to indorse checks. We quote from 2 C.J.S., Agency, § 112: "It has been said with reference to implied authority of this character that its scope is more limited in the field of negotiable instruments than in other instances. Power to execute or indorse negotiable instruments will not be lightly inferred but must ordinarily rest on an express grant, in the absence of circumstances clearly and cogently establishing it. No implication of such power will be made from the mere fact that the relation of principal and agent exists; however broad and general the agency conferred, it does not by implication embrace the authority in question unless the exercise of such authority is so essential to the accomplishment of the agency as to compel the belief that it was intended to be granted, by reason of the fact that the object and purpose of the agency would otherwise be defeated." See cases cited in the above text, including Coleman v. Seattle Nat. Bank, 109 Wash. 80, 186 P. 275, 12 A.L.R. 108, holding that "A statement certifying that the agent was authorized to 'transact any and all business' would not of itself authorize the agent to indorse checks payable to the principal."

■ Assuming, however, for the purpose of this discussion, that Metcalfe was wholly authorized to place these checks in the regular account of the navigation company, further argument of defendant bank thereto, is, that such agent was authorized to do directly the things which he was indirectly fully empowered to do; in other words, his authority to place these three checks to his personal account, as he did, thereby followed by necessary implication. Turning again to 2 C.J.S., Agency, § 112, supra, we find that, "An agent's authority as to negotiable instruments is not extended by implication, but is limited to a power to act in the manner and under the circumstances specified in the power, in the absence of circumstances establishing a broader apparent authority * * *, and, when a power to do particular acts is given, those are the only acts with reference to commercial paper which come within the agent's authority and he may not do others, even though they are similar in nature * * *; when authority is given to deal with paper for some specified purpose, or upon some specified occasion, no authority is thereby created to deal with it for some other purpose or on some other occasion." (Citing many cases.) See, also, Wichita Royalty Co. v. City Nat. Bank, 127 Tex. 158, 89 S.W.2d 394, 398, 93 S.W.2d 143, under facts quite similar: "It is not important as bearing on the questions involved that Peckham could have drawn checks on the trust account and cashed them, and deposited the proceeds in his personal account, thus accomplishing the same result. He did not use this method of getting control of the trust funds, by which the bank would not have been connected with the misappropriations; but used the method stated above, which connected the bank with it. The dissimilarity of the two methods from the standpoint of legal significance is pointed out in Quanah, A. & P. R. Co. v. Wichita State Bank & Trust Co. (Tex.Sup.) 89 S.W.2d 385, opinion this day adopted, in which Toronto Club v. Dominion Bank, 25 O.N.T.L. Rep. 330, Broadway Boxing Club v. Bushwick Nat. Bank, 127 Misc. 515, 216 N.Y.S. 713, and Underwood Ltd. v. Bank of Liverpool, 1 K.B. 775 (1924), are cited."

In the Wichita Royalty Company Case, above, Judge Taylor quoted the following excerpt from Wen Kroy Realty Co. v. Public Nat. Bank, 260 N.Y. 84, 183 N.E. 73, 74, that: "A power to act for another, however general its terms, or wide its scope, presupposes integrity and faithfulness in its exercise, and cannot be enlarged by implication or construction to the justification of a diversion to the use of the agent of moneys or property subject to the agency."

Neither is apparent authority, or agency by estoppel, involved here, there being no holding out or dealing by the navigation company with the bank, except through the writings already referred to, from which apparent or ostensible authority can be derived. 2 C.J.S. supra; Continental Oil Co. v. Baxter, Tex.Civ.App., Eastland Court, 59 S.W.2d 463.

■ Defendant's counterproposition, questioning the right of plaintiff to recover as surety, is overruled, under the liberal construction in Texas of "rights by subrogation," 39 Tex.Jur., Subrogation, § 6; and the defendant bank, being put upon inquiry to ascertain the actual authority of the agent Metcalfe to deposit the checks in his personal account, does not occupy such a position of innocency as will except it from the principles of the broad equitable doctrine above referred to.

■ Defendant's complaint of laches and failure of the navigation company to notify it of irregularities within 10 days is also overruled. This requirement related to the regular and authentic account and deposit of the navigation company, and no question is raised by anyone as to the regularity of such deposits, or the accuracy and proper handling of the same, either by the bank or by said Metcalfe. Had the three checks under discussion been deposited in the regular account of the navigation company and the proceeds subsequently withdrawn by such agent for an unauthorized use, upon failure of the navigation company to notify the bank of such irregularities, a situation quite different would have been presented.

Of course, the liability of the defendant upon the two checks totaling $2,843 is established if the indorsement and deposit of same by said agent were unauthorized, which we here hold. Fidelity & Deposit Co. of Maryland v. Fort Worth Nat. Bank, Tex.Com.App., 65 S.W.2d 276.

■ The case just cited is express authority for nonliability upon the remaining check of $968.86 by way of contract.

But plaintiff contends that recovery should be allowed on such instrument as in conversion. Defendant did not personally benefit from the transaction in question. Possession by Metcalfe, the agent, of this check was possession by his principal, the navigation company; and, so far as defendant had knowledge, said agent was authorized to deposit it to the account of his principal in such bank. Metcalfe's deposit of the check in his personal account, and not in the regular account of his principal at the bank, resulted in no profit to defendant, and was not such a participation by defendant bank in the conversion of trust funds as would render it liable for breach of a legal duty toward the navigation company, or constitute conversion under the precise facts here. Article 5935, R.S., § 56; Texas H. & I. Mut. Fire Ins. Co. v. Dallas Bank, Tex. Civ.App., 295 S.W. 665, Syl. 5; Quanah, A. & P. R. Co. v. Wichita Bank, 127 Tex. 407, 93 S.W.2d 701, 106 A.L.R. 821.

Plaintiff's recovery, we conclude, should be in the difference between the amount of the two checks above drawn on other banks—$2,843—and the amount of Metcalfe's personal account for which the navigation company received credit—$2,511.48—or the sum of $331.52. We cannot accept the figures suggested by appellant—$752.88—as the proper amount, for the reason that it would seem to include items of shortages not involved in the matters now before us.

The judgment of the trial court is reversed, and here rendered for plaintiffs, Independence Indemnity Company et al., against defendant, Republic National Bank & Trust Company, for $331.52, with interest from July 6, 1929, until paid.

Reversed and rendered.