[No. 15308.    Department Two.    August 5, 1919.]

JAMES PETERSEN et al., Appellants, v. PACIFIC AMERICAN FISHERIES, Respondent.[1]

PRINCIPAL AND AGENT (34)—AUTHORITY OF AGENT—SALES—EVIDENCE—SUFFICIENCY. Where the lease of a box factory required the lessee to finish and market certain stock on hand belonging to the lessor, receiving therefor actual cost and ten per cent added together with reasonable commissions, the lessee was clothed with apparent authority to sell the stock and receive payment for the same.

SAME (35, 42)—COLLECTION OF DEBTS—POWERS OF AGENT—REVOCATION—EVIDENCE—SUFFICIENCY. In such case, the fact that one of the lessors was referred to for an inventory and assisted in negotiating and consummating the sale did not revoke the lessee's authority to make the sale and collection, especially where the buyer had reason to suppose that such lessor was acting only as agent for the owner and not as owner.

SAME (38)—APPARENT AUTHORITY. As between one of two innocent parties, the loss must always fall upon the principal who has clothed an agent with apparent authority and enabled him to obtain an advantage over an innocent purchaser.

APPEAL (135)—OBJECTIONS—JUDGMENT. The failure to include interest in a judgment cannot be raised for the first time in the supreme court.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered December 12,

[1]Reported in 183 Pac. 79.

1918, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Bixby & Nightingale,* for appellants.

*Kerr & McCord,* for respondent.

BRIDGES, J.—The appellants sued to recover $1,065 as the purchase price of certain box shooks, and $75 as the purchase price of a certain shingle machine. The case was tried by the court without a jury. It gave judgment to the plaintiffs for $75, being the sale price of the machine, but refused judgment on account of the box shooks.

The facts are substantially as follows: Each of the parties hereto was the owner of a manufacturing plant at Bellingham. In May, 1916, the appellants and one Wood entered into a lease contract whereby the appellants leased their factory to Wood. This lease, among other things, contained the following clauses:

"Understood that one of the conditions for the execution of this lease is that the lessees, immediately upon taking possession of the aforesaid plant, advise with lessor as to how the said stock and material on hand should be completed and finished to the best advantage, in order to obtain available markets therefor, and that lessees will finish and complete within a reasonable time whatever work and material may be necessary in order to complete the aforesaid delivery of stock on hand so that the same can be marketed to the best advantage, and the lessees will be paid there-for the actual cost of finishing the said material and labor, plus ten per cent on the same. Lessees further agree to immediately market said stock upon its being finished and completed to the best advantage and charge therefor a reasonable commission, and it is understood that said stock and material remain in the warehouse of said plant, where the same is now situate, until lessor determines to sell the same, without the paying of any rental or compensation for the use of said warehouse during said time."

Wood thereafter transacted business under the name of W. W. Wood Manufacturing Company. He at once entered into possession of the leased property, including all box shooks, lumber, etc., on the premises, and he remained in possession throughout the period of this controversy. Shortly prior to August, 1916, F. O. Biery, one of respondent's foremen, visited the Wood plant with the view of purchasing its hand shingle machine. While on the premises he saw a miscellaneous lot of box shooks, which he thought his employer might want to purchase. He entered into negotiations with Wood concerning the purchase of the machine and such of the box shooks as would suit the purposes of respondent. Wood, however, did not have any inventory of the box shooks, and referred Biery to Thomas R. Waters for this information. Mr. Waters was an attorney at law at Bellingham and part owner of the leased property. Biery had several conferences with Waters looking towards the purchase of certain of the box shooks; they did not, however, at that time agree upon a sale. Later, Wood again took up the question of the sale with Biery and terms were substantially agreed upon. Biery, however, did not have any authority to consummate the sale and requested Waters to meet H. B. Drisko, respondent's assistant manager, at the office of respondent, for the purpose of closing the deal. Upon this request, Mr. Waters met Mr. Drisko at respondent's office, where the deal was closed. The shingle machine was sold for $75, and such of the box shooks as the respondent might select out of a miscellaneous lot were sold for $3 per thousand sets.

Waters testified that, at this conference, he requested the respondent to send to him or to one James McDonald the check for the purchase price. Drisko and

Biery, who were both present at this conference, denied
that anything was said about the check or to whom
payment should be made. The following day Waters
went East, and did not return to Bellingham until about
the first of November, 1916. Wood took charge of the
sorting and tallying and delivering of the shooks to
respondent; Biery assisting in keeping the tally. From
the time of the sale on till early in November, neither
Wood nor any of the appellants had anything to do
with the shooks. They had no further conferences
with respondent and did not send respondent any state-
ment of the shooks sold or make any demand for pay-
ment. Sometime in October and before Waters re-
turned from the East, the Wood Manufacturing Com-
pany sent to the respondent a bill for the purchase
price of the machine and the box shooks. This bill ran
against respondent and in favor of the Wood Company.
It was on the billhead of the Wood Manufacturing
Company. A few days after receiving the statement,
the respondent made its check for the amount of the
bill to the Wood Manufacturing Company, and the
latter, after having received the check, cashed it and
has never paid the appellants any of the proceeds
thereof. Upon Waters' return from the East, he
learned that his company had not received its pay, and
made inquiry of the respondent and was told that pay-
ment had been made to the Wood Manufacturing Com-
pany. One O. W. Crandall, who was in the employ of
the Wood Manufacturing Company and acted in the
capacity of bookkeeper and manager, testified that
Waters told him to send a bill to respondent and col-
lect the money. Waters denied this.

The court's findings give the facts substantially as
above, but, in addition, find that, by the terms of the
lease contract, Wood was authorized and empowered

to sell the box shooks and to collect the purchase price thereof, but that he did not have any authority to sell the machine or to collect therefor; that, when the deal was closed at the office of the respondent, Waters requested the respondent to send a check in payment either to him or McDonald, but nothing was said as to whom the check should be drawn; that Biery, who represented the respondent, did not know that Waters had, or claimed to have, any ownership in the box shooks, but thought he was representing the owner of the shooks or the Wood Manufacturing Company, as agent or attorney. The court further found that the power given by the lease to Wood to sell the box shooks had never been revoked.

The trial court based its conclusions and judgment almost entirely on the lease contract. The appellant urges a new trial, chiefly on two grounds; first, that the lease contract does not authorize Wood to sell the box shooks or to collect the price thereof; and second, that if the lease does authorize Wood to sell the shooks and collect therefor, that power was revoked before the consummation of the sale in controversy here. The statement of a few fundamental principles will assist in arriving at a correct decision.

"Where the principal has clothed the agent with the *indicia* of authority to receive payment, as by entrusting him with the possession of the goods to be sold, the purchaser is warranted in paying the price to the agent at the time of sale. But when the agent has not the possession of the goods, and no other *indicia* of authority, and is only authorized to sell, the purchaser pays the agent at his peril, and it devolves upon him to show that the agent was authorized to receive payment." 1 Am. & Eng. Ency. Law (2d ed.), p. 1014.

Payment to an authorized agent will operate as a discharge of the indebtedness, though the agent mis-

appropriate the payment. 22 Am. & Eng. Ency. Law (2d ed.), p. 518.

A principal is not only bound by the acts of his agent, general or special, within the authority which he has given him, but he is also bound by his agent's acts within the apparent authority which the principal himself knowingly permits his agent to assume, or which he holds the agent out to the public as possessing. *Galbraith v. Weber,* 58 Wash. 132, 107 Pac. 1050, 28 L. R. A. (N. S.) 341.

The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. 31 Cyc. 1333.

One clause of the lease contract provided that Wood should advise with the appellants as to how to obtain available markets for the box shooks and "that lessees will finish and complete within a reasonable time whatever work and material may be necessary in order to complete the aforesaid delivery of stock on hand so that the same can be marketed to the best advantage . . . Lessees further agree to immediately market said stock upon its being finished and completed to the best advantage and charge therefor a reasonable commission, and it is understood that said stock and material shall remain in the warehouse of said plant, where the same is now situated, until the lessor determines to sell the same, without the payment of any rental or compensation for the use of the warehouse during said time." The appellants contend that this provision of the lease only authorized Wood to find a market and does not authorize him to sell the shooks. We cannot so hold. The contract shows clearly that

the intention was that Wood should not only have the
authority, but it would be his duty actually to sell these
box shooks. The instrument even goes so far as to
provide that the lessees shall be entitled to a reason-
able commission for this service. It is true that the
last clause above quoted provides that the box shooks
shall be permitted to remain in the warehouse "until
the lessor determines to sell the same," but this was
not intended to reserve the right of sale exclusively in
the appellants, but was put in the contract merely to
guard against any charge which the lessees might make
the appellants for warehouse rent.

The appellants further contend, however, that the
implied power to collect the purchase price is always
dependent upon the exercise by the agent of his power
to sell, and that, where the principal makes the sale,
the presumption of law is that he alone had authority
to make the collection; and that, since Waters actually
made the sale, the agent had no authority to make the
collection. As principles of law, these contentions may
be accepted as correct, but they are inapplicable here
because the testimony does not show that Waters, as
the owner of the property, made the sale. The most
that he did was to assist in making the sale, and even in
this the respondent supposed, and had reason to sup-
pose, that Waters was acting as the agent or attorney
for the owner, and not as owner. The appellant con-
tends that the trial court's finding was to the effect
that Waters made the sale, but we do not so construe
it. The finding was merely to the effect that Waters
finally closed or confirmed the sale. We have very
carefully read and considered the testimony and it is
perfectly plain to us that the terms of the sale were
made between Wood and Biery, the foreman of the
respondent, and that Waters did nothing more than to

assist in the making of the sale. It cannot be said that what Waters did had the effect of revoking the powers given in the lease to Wood.

As between two innocent persons, one of whom must suffer, the loss should always fall on the principal who has clothed the agent with apparent authority and thus enabled him to obtain the advantage of the person with whom he deals, rather than on the purchaser. *Galbraith v. Weber, supra.* Considering all the testimony, we cannot avoid the conclusion that not only did the lease itself give Wood the power to sell and collect, but that the conduct and acts of the appellants, through Waters, were such as to hold out to the respondent that Wood was authorized to sell as well as to collect. Under all the circumstances as shown by the record, it seems to us that any person placed in the position of the respondent, and having the information which it had, would, without hesitancy and with perfect justification, have made the payment to Wood, as the respondent did in this case.

It will not serve any good purpose for us to particularly refer to the testimony upon which our conclusion is based.

The appellants contend that the judgment of the trial court for $75 should have carried interest from the date it should have been paid to the date of judgment. If it should be conceded that the court would have had authority to have given interest, yet we find that the appellants are in no position now to raise that question. The court's conclusion of law number one was to the effect that the appellants were entitled to judgment for $75, and for its costs and disbursements. The conclusion did not provide for any interest. The appellants did not take any exception to the conclusion, nor do we find anything in the record which would tend to

indicate that the appellants at any time called the court's attention to this question of interest. Appellants seem to have raised the question for the first time in this court.

Judgment affirmed.

HOLCOMB, C. J., PARKER, FULLERTON, and MOUNT, JJ., concur.