[No. 23006. Department Two. September 2, 1931.]

WILLIAM N. MARTIN, *Plaintiff*, v. WILLIAM O. McKAY
COMPANY, *Appellant*, PEARL MARTIN *et al.*,
*Respondents.*[1]

*Roberts, Skeel & Holman* and *Harry Henke, Jr.*, for
appellant.

*Henry W. Cramer,* for respondent Rocky Mountain
Service Company.

FULLERTON, J.—This is an appeal from a judgment
in an action at law tried to the court without a jury.
The action was brought by William N. Martin as plain-
tiff against the appellant, William O. McKay Com-
pany, to recover the value of a Whippet automobile.
The appellant filed an answer and cross-complaint,
seeking by the cross-complaint to recover the unpaid
part of the purchase price of a Ford automobile; and,
at the same time, the appellant caused the respondents
to be made parties defendant and filed a complaint.
against them (except Pearl Martin) to recover dam-
ages for the conversion of the same Ford automobile.

[1]Reported in 2 P. (2d) 885.

The trial judge made findings of fact and conclusions of law, and rendered a judgment thereon, to the effect that the plaintiff recover of the appellant $324, and that the appellant take nothing upon its complaint against the respondents. While the appeal was taken from all parts of the judgment adverse to the appellant, the only controversy presented to this court by the briefs and arguments is whether the appellant is entitled to recover the value of the Ford automobile from the respondent Rocky Mountain Service Company.

The facts are in substance these: The plaintiff, Martin, had a Whippet automobile that he was purchasing on the installment plan under a conditional sale contract. Desiring a lighter car, he took the Whippet to the place of business of the appellant, a dealer in Ford automobiles, and there told one Lounsbury, an employee of the appellant, that he wanted to trade in his equity in the Whippet upon the price of a used Ford. Lounsbury called one Johnson, another of the appellant's employees, to confer with Martin, and to him Martin repeated what he had said to Lounsbury.

After some negotiations with Johnson, during which Martin stated how much he still owed on the Whippet and the name of the concern from which he was buying it, Johnson offered to allow Martin $225 on the price of a new Ford car. Martin accepted this offer. Johnson thereupon prepared a simple bill of sale designed to convey the Whippet to the appellant, with a warranty against liens and encumbrances. This was done by filling in the blank spaces in a printed form in which the name of the appellant was in print. Martin signed this bill of sale without reading it, supposing that he was conveying merely his interest, or "equity," in the car, and that the appellant was assuming the unpaid part of the purchase price.

An order for the new Ford that Martin was to purchase was then made out and was signed by Martin. It contemplated the immediate payment of $225 and the payment of the rest of the price in monthly installments, the title to the car to remain in the appellant until the full price had been paid.

Two days later, the Whippet was delivered to Johnson at the appellant's place of business. Johnson treated the car as his own and sold it to a used car dealer for $260, of which amount he retained $35 and turned over to his employer, the appellant, $225. Some days later, the Ford car ordered by Martin was delivered to him, and a formal conditional sale contract from the appellant to Martin was executed in accordance with the terms of the order.

In a few weeks, Martin was warned by the assignee of the vendor in the conditional sale contract for the Whippet that he was in default as to an installment of the purchase price. Martin immediately telephoned Johnson and demanded to know the reason for the failure of the appellant to make the payment. Johnson feigned to believe that Martin had represented to him that he, Martin, was the owner of the Whippet car, and that it was fully paid for. Conferences ensued between Martin and Johnson, at one or more of which Lounsbury was present. During these conferences, there were promises made to Martin that the matter would be adjusted; but finally Johnson, after asserting to Martin that, by giving the bill of sale of the Whippet, he had committed a crime, demanded that the Ford car be surrendered to the appellant, so that it might be sold and the proceeds be used to pay the balance on the Whippet contract, the remainder, if any, to be applied upon the Ford contract. In compliance with this demand, Martin surrendered the Ford car to Johnson at the appellant's place of business.

Johnson sold the Ford car to the Rocky Mountain Service Company, one of the respondents, for $450. He did not turn this money in to his employer, the appellant, nor apply any of it on the Whippet contract. Later, he absconded, and the surety on his fidelity bond reimbursed the appellant, to the extent of the amount of the bond, for certain defalcations, not including, however, any part of the sum he received for the Ford car.

The trial judge found, in effect, that, so far as Martin and the service company were concerned, Johnson's transactions with them were the appellant's transactions; or, in other words, that Johnson had apparent authority, as the agent of the appellant and on its behalf, to purchase the Whippet car, and to repossess from Martin the Ford car, and thereafter to sell the Ford car to the service company.

The appellant contended in the superior court, and contends here, that Johnson had no authority as its agent to do anything but solicit orders for automobiles from intending purchasers, subject to the appellant's approval in each instance; or, at most, authority to sell automobiles to intending purchasers; and there was testimony on behalf of the appellant that, so far as concerned the rules and practices of the appellant's business organization, Johnson's authority was circumscribed as the appellant contends. Authorities are cited by the appellant to sustain the rule that an agent with authority to sell goods has no implied authority to rescind a sale and take back the goods or to alter the contract of sale in any material respect.

We need not now inquire into the validity or propriety of this rule or the scope of its application, for we find ample evidence to justify the trial judge's view of the facts. It would not be useful to detail the evidence here. It is sufficient to say, as to the trans-

actions with Martin, that there is no evidence that, up to the time he surrendered the Ford car, he knew or came in contact with any person connected with the appellant's business or place of business except Johnson and Lounsbury and the cashier to whom he paid the first monthly installment on the price of the car; and no evidence that he knew or ought to have known the limitations upon Johnson's authority under the rules and practices governing the internal management of the appellant's business.

And as to the service company, it is enough to say that the evidence, while conflicting, was sufficient, if believed, to show such a course of previous dealings between the appellant and the service company as might well lead the latter to believe that Johnson and other salesmen of the appellant had authority to sell used cars for the appellant and to receive payment for them.

We have examined and considered all of the evidence, and find that the preponderance is with the trial judge's findings of fact.

Judgment affirmed.

TOLMAN, C. J., MILLARD, BEELER, and BEALS, JJ., concur.