[No. 25429. Department Two. April 12, 1935.]

W. L. FEELY LUMBER COMPANY, *Respondent,* v. BOOKSTAVER-BURNS LUMBER COMPANY, *Appellant.*[1]

*Ballinger, Hutson & Boldt,* for appellant.
*Wilbur Zundel,* for respondent.

[1]Reported in 43 P. (2d) 953.

MITCHELL, J.—This action was brought to recover damages for the breach of a contract of purchase of shingles. Upon trial without a jury, findings of fact, conclusions of law and judgment for $792.50, interest, and costs, were entered in favor of the plaintiff. The defendant has appealed.

No statement of facts has been brought up, and, as stated in appellant's brief, the appeal presents the sole proposition of whether the findings of fact justify the conclusions of law and sustain the judgment. There is no claim of conflict between the conclusions and the judgment.

According to the findings of fact, it appears that the respondent is a Washington corporation, and that the appellant is a California corporation, and since 1926 has engaged in buying lumber in this state, maintaining a business office in Seattle; that on its Seattle office door appellant's name appears, and below it the name of Roger Jayne; and that the rental, office and other expenses, such as telephone, telegraph and incidentals, are paid by the appellant from its head office in Los Angeles; that appellant owns all the furniture and records in its Seattle office; that its name appears in the general and classified sections of the Seattle telephone directory; and that its stationery for years shows that it maintains its Seattle office.

Roger Jayne, during all the times mentioned, was a full time employee and representative of the appellant at its Seattle office, being paid a salary and certain personal expenses; that the Seattle office is maintained by the appellant for Jayne, pursuant to his employment by the appellant; that appellant buys a large amount of lumber in this state, as much as thirty-nine million feet one year, about eighty per cent of which is purchased through the assistance of Jayne, according to a plan arranged between them that Jayne is

advised from the head office of what is wanted, and, upon his finding it, he makes a written memorandum similar to the one used in this case, delivers a copy to the seller, and advises the head office of the purchase; after which, if agreeable to the appellant, Jayne then completes the purchase by a further communication to the Los Angeles house. Sometimes, Jayne volunteers information at which lumber material may be purchased, which, upon advice from Los Angeles, results in purchases.

Prior to any transaction with respondent, the appellant notified the mills in this state with which it was doing business that purchases arranged through Jayne must be confirmed in writing by the head office at Los Angeles. Respondent knew nothing of the giving of such notices.

The court further found:

"That prior to June 22nd, 1933, defendant was not regularly doing business with plaintiff, and the first transaction of any kind or nature between plaintiff and defendant occurred on June 22nd, 1933, and again on June 27th, 1933, when Jayne arranged certain purchases by defendant from plaintiff, upon neither of which was payment made, nor any other communication of any nature concerning the same had between plaintiff and the Los Angeles office of defendant prior to July 10th, 1933, the date on which the memorandum order on the controversy here in question and hereafter referred to was delivered by Jayne to A. J. Summerville as the representative of plaintiff; that on June 22nd, 1933, Roger Jayne while in the Seattle office, delivered to plaintiff's representative Summerville a memorandum order form which directed the plaintiff to ship to the defendant at Los Angeles certain lumber, and which order form contained all the terms and provisions of the sale; that said memorandum was made out in the handwriting of said Jayne and contained no provisions whatsoever, or intimation of the fact, that it was not a binding order, or that it

must be confirmed through the Los Angeles office of the defendant; that the lumber on said order was delivered to the defendant, and on or about the 13th of July, 1933, the plaintiff received payment therefor, without any notice or intimation of any confirmation from Los Angeles; that thereafter two subsequent similar orders were likewise delivered to the plaintiff for lumber by the said Roger Jayne, which orders were without any confirmation whatsoever and were paid for by the defendant in August 1933; that plaintiff was not specifically advised by defendant of Jayne's lack of authority or the necessity of confirmation on purchases arranged by him, as aforesaid, *nor did the plaintiff have any intimation or reason to believe that Jayne's authority was limited.*"

That neither Feely, the manager of the respondent, nor Summerville, its representative who handled the sale in question here, had any knowledge that Jayne was without authority to make the purchase in the manner herein made; that, on numerous prior occasions, Summerville had seen Jayne arrange for the purchase of lumber products by delivering to the sellers written memoranda and orders of the same form as the one used in this case, but had no knowledge of whether those orders had to be confirmed at the Los Angeles office; that, in dealing with Jayne as agent of appellant, respondent's representative relied, among other things, upon the fact that Jayne was in appellant's Seattle office and was generally known as representing the appellant in some capacity *as a buying representative.*

Summerville frequently knew of purchases of lumber being arranged by Jayne for appellant, and had seen him issue such memoranda and orders as the one in question, and knew of shipments of lumber thereunder to the appellant; that respondent's representative never made any inquiry of the appellant at its head office as to the extent of Jayne's authority.

It was further found:

"That the custom of issuing said order forms was well known to the officers of defendant corporation; that the issuance of said memorandum order in writing was not a departure from the usual manner of purchase and sale but was, in fact, in conformity with the usual custom of the purchase and sale."

On July 10, 1933, Jayne delivered to respondent's representative the instrument involved in this controversy, which is as follows:

"ORDER No. Memo 3954          DATE July 7, 1933
"M. W. H. Feeley Lumber Co.,
   901 White Bldg., Seattle, Wash.
"SHIP To   Bookstaver-Burns Lbr. Co.  L. A.
"AT   same—San Pedro
"How SHIP   water
"TERMS   2% for cash                    WHEN
"SALESMAN                                BUYER
"1250M No. 2 R. C. Shingles Green              2.20
"  600M No. 3 R. C. Shingles Green             1.90
"Above Prices are F. A. S. Vessel Port Angeles
          Safe Berth guaranteed
                No Commission
"All wharfage and handling are for mills account
"Grade—R. C. Shingle Bureau's Rules of Dec. 1, 1931
"Shipment to be arranged probably August 7 to 10,
     1933."

The instrument was partly printed, the balance being written by Jayne. On that and the following day, Jayne wired his house at Los Angeles of the transaction, and received a wire instructing him that it did not desire to make the purchases, and thereafter respondent learned nothing further about the matter until its invoices went through the banks and were presented to the appellant at its Los Angeles office on August 17, 1933, at which time the appellant denied the contract and refused payment.

Upon receiving the order on July 10th, Feely and Summerville at once contracted for the purchase of

the shingles from a firm in Port Angeles, with which to supply respondent's contract with appellant, and delivered the shingles to a shipping dock on August 5, 1933, for transportation to the appellant.

The market prices of shingles had dropped—No. 2 to $1.75 and No. 3 to $1.40. Respondent paid storage on the dock for a few days in the sum of five dollars.

Appellant's contention that the findings do not support the judgment is argued under two heads: (1) That the findings are insufficient to establish apparent authority in Jayne; (2) that it affirmatively appears from the findings of fact that respondent did not make a sufficient, or any, investigation of Jayne's authority.

As to the first contention, the findings show that Jayne did not have authority to complete the purchase of lumber products without the approval of appellant; that is, that was the understanding between him and his principal. Of this fact, however, the respondent had no knowledge, and, but for the application of the general rule binding the principal where the agent acts within the apparent scope of his authority, the respondent would not be entitled to prevail in this action. The case then presents the question of the apparent authority of the agent, rather than his actual authority.

In *Petersen v. Pacific American Fisheries,* 108 Wash. 63, 183 Pac. 79, 8 A. L. R. 198, we expressed the applicable rule, as follows:

"A principal is not only bound by the acts of his agent, general or special, within the authority which he has given him, but he is also bound by his agent's acts within the apparent authority which the principal himself knowingly permits his agent to assume, or which he holds the agent out to the public as possessing. *Galbraith v. Weber,* 58 Wash. 132, 107 Pac. 1050, 28 L. R. A. (N. S.) 341.

"The apparent authority, so far as third persons are concerned, is the real authority, and when a third

person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. 31 Cyc. 1333.''

Also, see *Martin v. McKay Company,* 164 Wash. 274, 2 P. (2d) 885; *Leavens v. Pinkham & McKevitt,* 164 Cal. 242, 128 Pac. 399.

The rule is well stated in 2 C. J. (Agency) 573, § 211, as follows:

''The true limit of the agent's authority to bind the principal as between the principal and third persons is the apparent authority with which the agent is invested, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation, in the absence of circumstances putting him on inquiry, to inquire into the agent's actual authority, as the presumption is that one known to be an agent is acting within the scope of his authority.''

But it is contended that the findings are insufficient to establish apparent authority in Jayne to make the contract of purchase. That Jayne was an agent of appellant, there is no question. The appellant had maintained its business office in Seattle for seven years, with its name on the door and Jayne's name immediately under it, and it owned all of the furniture and records in the office; it kept the Seattle office for Jayne, who it is not claimed devoted any of his time to any other business; it carried classified and general advertisements in the telephone directory; purchased, through Jayne, eighty per cent of millions of feet of lumber annually; provided and kept in general use in the Seattle office printed order forms like the one used in this transaction (which contains no statement on it that the transaction is subject to confirmation at the home office of appellant), and paid for two purchases of lumber from the respondent made

by Jayne in the same way during the prior month of June. On numerous prior occasions, Jayne made purchases of lumber from other persons in the same manner, and received shipments of the lumber within respondent's knowledge; respondent knew of appellant's Seattle office, and that it was kept by Jayne, who was generally known as a buying representative of the appellant.

These facts and circumstances were sufficient to reasonably make it appear to the average, ordinary business man that Jayne as agent had authority to make the contract in question, upon which the respondent acted to its disadvantage in the amount of the judgment appealed from. Jayne was an agent of appellant, and the only one in appellant's Seattle office for seven years.

"If for its own purposes a corporation is compelled to employ an agent with such apparent authority as may mislead the public, it should be required to secure one who will not act in excess of his actual authority, and thereby deceive others." *Brace v. Northern Pacific Ry. Co.*, 63 Wash. 417, 115 Pac. 841, 38 L. R. A. (N. S.) 1135.

Upon the second contention upon the appeal, that respondent did not investigate Jayne's actual authority, the question naturally arises: When or why should it have been investigated? We have already seen that, in such cases as this, the rule is that, after a third person has ascertained an agent's apparent authority, "he is under no further obligation to inquire into the agent's actual authority." *Galbraith v. Weber*, 58 Wash. 132, 107 Pac. 1050, 28 L. R. A. (N. S.) 341; *Petersen v. Pacific American Fisheries*, 108 Wash. 63, 183 Pac. 79, 8 A. L. R. 198; *Martin v. McKay Company*, 164 Wash. 274, 2 P. (2d) 885; *Aetna Insurance Co. v. Holmes*, 59 Fla. 116, 52 So. 801; *Leavens v. Pink-*

*ham & McKevitt,* 164 Cal. 242, 128 Pac. 399; *Consolidated Flour Mills v. Roberts,* 123 Okla. 101, 252 Pac. 29; 2 C. J. (Agency) 573, § 211.

The findings here do not show that respondent was under any obligation to go further and inquire as to Jayne's actual authority.

Judgment affirmed.

MILLARD, C. J., HOLCOMB, STEINERT, and BLAKE, JJ., concur.