[No. 38047. Department One. April 7, 1966.]

MELVIN D. WALKER, *Respondent,* v. PACIFIC MOBILE HOMES, INC., *Appellant.*\*

\*Reported in 413 P.2d 3.

*Riach & Gese* (*W. Morgan Johnson,* of counsel), for appellant.

*Dore, Dubuar & Cummins,* by *David C. Cummins,* for respondent.

HALE, J.—Plaintiff left his trailer to be sold on consignment. One of the defendant's salesmen sold it and absconded. Defendant, disclaiming responsibility for the consignment, appeals the $1,290.51 judgment.

The case turns on whether the court properly found from conflicting evidence that defendant's salesmen acted within their apparent or ostensible authority. Plaintiff Walker owned a 25-foot, 1953 Mainliner trailer in Seattle. Deciding to sell it and return to his former home in Oregon, he went to several trailer lots to see if the dealers would handle it on consignment. He found no dealers interested in a consignment until he met Robert Stewart at the lot of defendant Pacific Mobile Homes at South 140th and Pacific Highway.

At the trailer lot where plaintiff first talked to Stewart, he noticed a large sign designating it as Pacific Mobile Homes, Inc., an office, a number of trailers on display, and observed that Mr. Stewart appeared to be the sole employee in attendance. Behind the lot was a large trailer park known as "Southgate Trailer Park." Plaintiff told Stewart he would sell on consignment if he could get a net price of $1,500, and Stewart told him that he was too busy moving the trailers around at the moment to complete the deal but would pick up the trailer in a few days.

A few days later, Stewart came with a truck to plaintiff's residence and towed the trailer to the Pacific Mobile Homes lot where plaintiff on several occasions saw it among the other trailers displayed there. May 27, 1959, plaintiff stopped at the trailer lot where he again found Stewart alone in the office, and suggested that, since he intended to go to Oregon for a while, some sort of writing should be made out. Thereupon, plaintiff says, Stewart got a blank form having the legend "Trailer Consignment Agreement"

in bold-faced type across the top, filled it out in ink, but, in barely legible handwriting, designated thereon Southgate Trailers as consignee. Plaintiff signed the consignment agreement, stating at the trial that, being primarily concerned at the time with the provisions as to net price and the avoidance of storage charges if the trailer was not sold, he did not notice the name of the consignee.

About one month later, a Robert Henderson telephoned plaintiff in Oregon, asking if plaintiff had left his trailer on consignment with Stewart at Pacific Mobile Homes and explained that Stewart was no longer with the firm but that he, Henderson, was the new manager. Henderson then told plaintiff they still had the trailer and had lined up a possible buyer. A few weeks later, plaintiff returned to Seattle from Oregon and talked to Henderson at the trailer lot. Plaintiff saw his trailer on this occasion still on display among the others and testified that Henderson, like Stewart before him, was there alone at the office and trailer lot.

Henderson again told him that he had a likely deal pending, and plaintiff went back to Oregon to have the deal confirmed by mail. He received a letter on the business stationery of Pacific Mobile Homes, Inc., giving the corporation's main office address at Edmonds and the branch office at 140th and Pacific Highway South, and containing also an installment note signed by one Korsmoe as maker. The letter, handwritten by Bob Henderson, dated July 25, 1959, explained that, after four payments, the enclosed note would be discounted and balance thereof paid in cash. Each month for the next three months, plaintiff received a monthly payment in the form of a check signed by Henderson, and when these ceased he returned to the trailer lot to inquire about the unpaid balance.

He found that Henderson had actually sold the trailer not to Korsmoe but to one Anderson for $1,500 cash, and, save for the three payments totaling $209.41, had absconded with the balance. After more than a year spent in tracing him, plaintiff located Henderson in the penitentiary at Walla Walla.

Henry M. Shelly, president of Pacific Mobile Homes, testified that his company maintained a small one-room office on the South 140th street trailer lot; that the lot had a sign 28 feet high and 14 feet long with "Pacific Mobile Homes, Inc." on it; that he visited the lot to check it about three times a week. He said that Stewart worked at the lot from April to July, 1959, and Henderson started to work there in June, but ordinarily there would be only one salesman on duty at any one time.

He said that neither had authority to complete a sale without approval of himself or the company sales manager and that all sales documents had to be signed by himself personally. He said too that the company forbade its salesmen to take trailers on consignment; that neither he nor the company had any record or knowledge of either the plaintiff's trailer, the consignment arrangement, or any other phases of the transaction; that he had never, during his periodic inspections, seen plaintiff's trailer on the lot. Only on a few occasions, he said, had his company taken trailers for sale on consignment and that all salesmen were well acquainted with this company policy.

■ Although the agent's authority must be established through proof of the principal's conduct, representations or actions (*Charette v. American Surety Co. of New York*, 49 Wn.2d 777, 307 P.2d 252 (1957)), and cannot be proved by the admissions of the agent (*Foote v. Grant*, 56 Wn.2d 630, 354 P.2d 893 (1960)), the trial court, in the present case, had before it substantial evidence from which to find apparent authority.

■ We believe the evidence warranted findings and conclusions that Pacific Mobile Homes had clothed Stewart and later Henderson with apparent or ostensible authority to take the trailer on to the lot for sale on consignment and to collect the purchase money therefor. The salesman's solitary presence in the company office and about the lot on several occasions, among numerous trailers on display, beneath a sign conspicuously proclaiming the whole to be an enterprise of Pacific Mobile Homes, Inc., and his towing

plaintiff's trailer to the trailer lot and putting it on display there, allowed a person of ordinary business prudence to reasonably assume that the salesman had authority from Pacific Mobile Homes, Inc., to buy, sell, receive and deliver trailers for cash, on credit, consignment, or in exchange. Then, too, the salesman's untrammeled access to and use of his principal's letterhead, stationery and business forms, and his seeming control of the office and lot, fortify the idea of apparent authority.

 Authority to perform particular services for a principal carries with it the implied authority to perform the usual and necessary acts essential to carry out the authorized services. *Larson v. Bear,* 38 Wn.2d 485, 230 P.2d 610 (1951). One dealing in good faith with an agent who appears to be acting within the scope of his authority is not bound by undisclosed limitations on the agent's power. *Feely Lumber Co. v. Bookstaver-Burns Lumber Co.,* 181 Wash. 503, 43 P.2d 953 (1935).

Our decision in *Lamb v. General Associates, Inc.,* 60 Wn.2d 623, 374 P.2d 677 (1962), succinctly declares the principles which govern the instant case:

> It is a general rule, and the rule in this state, that a corporation may be bound by the contracts or agreements of its agent if within the apparent scope of the agent's authority, although the contract may be beyond the scope of his actual authority. [Citing cases.]
>
> It is also the well-established rule that the apparent or ostensible authority of an agent can be inferred only from acts and conduct of the principal. [Citing cases.] The extent of an agent's authority cannot be established by his own acts and declarations. [Citing cases.]
>
> The burden of establishing agency rests upon the one who asserts it. Facts and circumstances are sufficient to establish apparent authority only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry. [Citing case.]
>
> A principal may be estopped to deny that his agent possesses the authority he assumes to exercise, where the

principal knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he possesses the authority exercised, and avails himself of the benefit of the agent's acts. [Citing case.]

Applying the foregoing principles to the proofs presented on behalf of both the plaintiff and the defendant compels an affirmance.

Affirmed.

ROSELLINI, C. J., OTT and HUNTER, JJ., concur.

HILL, J. (dissenting)—I dissent. To me it is clear that the plaintiff knew that he was not doing business with Pacific Mobile Homes, Inc., and that he knew he was doing business with Robert Stewart, and later Bob Henderson. This action is somebody's afterthought, which has certainly paid off well.

Not only did the consignment form, which the plaintiff received when he delivered his trailer to Robert Stewart, contain no reference to Pacific Mobile Homes, Inc., but the checks he received in payment on his trailer were the personal checks of Bob Henderson. It was only after he finally located, in the penitentiary, the man who had defrauded him and realized that there was no balm in Gilead there, that the idea that Pacific Homes, Inc., ought to share its wealth with him, was evolved.

I will assume with the majority that the evidence warranted a finding that Pacific Mobile Homes had clothed Stewart, and later Henderson, with apparent or ostensible authority to take a trailer for sale on consignment.

Where the plaintiff's case breaks down, is that there is no evidence to establish that he relied on that apparent or ostensible authority. Instead it establishes that he at all times believed he was dealing with Stewart or Henderson. For more than a year, he ignored Pacific Mobile Homes, Inc. —all the time transacting business at the same locations, all

the time readily available—and instead devoted his time and energies to locating Henderson.

For this hiatus in proof, I would set aside the judgment and dismiss the action.

*Reported in 413 P.2d 15.